## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| THOMAS MILTON BENSON, JR., in his capacity as GRANTOR OF THE RENEE BENSON 2009 IRREVOCABLE TRUST, THE RITA BENSON LEBLANC 2009 IRREVOCABLE TRUST, THE RYAN LEBLANC 2009 IRREVOCABLE TRUST, THE RENEE BENSON 2012 IRREVOCABLE TRUST, THE RITA BENSON LEBLANC 2012 IRREVOCABLE TRUST, THE RYAN LEBLANC 2012 IRREVOCABLE TRUST, THE TOM BENSON 2012 GRANTOR RETAINED ANNUITY TRUST, AND THE TOM BENSON 2014 GRANTOR RETAINED ANNUITY TRUST | CIVIL ACTION NO. 15-782<br><br>SECTION " "<br><br>JUDGE<br><br>MAGISTRATE |
| Plaintiff, | |
| VERSUS | |
| ROBERT A. ROSENTHAL, in his capacity as TRUSTEE OF THE RENEE BENSON 2009 IRREVOCABLE TRUST, THE RITA BENSON LEBLANC 2009 IRREVOCABLE TRUST, THE RYAN LEBLANC 2009 IRREVOCABLE TRUST, THE RENEE BENSON 2012 IRREVOCABLE TRUST, THE RITA BENSON LEBLANC 2012 IRREVOCABLE TRUST, THE RYAN LEBLANC 2012 IRREVOCABLE TRUST, THE TOM BENSON 2012 GRANTOR RETAINED ANNUITY TRUST, AND THE TOM BENSON 2014 GRANTOR RETAINED ANNUITY TRUST | |
| Defendant. | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

### COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTION

Plaintiff Thomas Milton Benson, Jr., in his capacity as Grantor of the Renee

Benson 2009 Irrevocable Trust, the Rita Benson LeBlanc 2009 Irrevocable Trust, the Ryan

LeBlanc 2009 Irrevocable Trust, the Renee Benson 2012 Irrevocable Trust, the Rita Benson LeBlanc 2012 Irrevocable Trust, the Ryan LeBlanc 2012 Irrevocable Trust, the Tom Benson 2012 Grantor Retained Annuity Trust, and the Tom Benson 2014 Grantor Retained Annuity Trust (hereinafter, "Mr. Benson" or "Grantor"), makes the following Complaint for declaratory judgment and injunctive relief against Robert A. Rosenthal, in his capacity as Trustee of the Renee Benson 2009 Irrevocable Trust, the Rita Benson LeBlanc 2009 Irrevocable Trust, the Ryan LeBlanc 2009 Irrevocable Trust, the Renee Benson 2012 Irrevocable Trust, the Rita Benson LeBlanc 2012 Irrevocable Trust, the Ryan LeBlanc 2012 Irrevocable Trust, the Tom Benson 2012 Grantor Retained Annuity Trust, and the Tom Benson 2014 Grantor Retained Annuity Trust (hereinafter, "Defendant Rosenthal" or "Trustee").  In support of his Complaint, Mr. Benson alleges as follows:

## I.   PARTIES, JURISDICTION, AND VENUE

1.      Mr. Benson is an individual of the full age of majority and a citizen of the State of Louisiana.

2.      Defendant Rosenthal is an individual of the full age of majority and a citizen of the State of Texas.

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that the claims asserted herein arise under laws of the United States.

4.      This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and because this is an action between citizens of different states.

5.      Venue is proper in the United States District Court for the Eastern District of Louisiana pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the property that is the subject of this action is situated in this judicial district.

1180579v1

## II.    FACTS

### Creation of the 2009 Trusts By Mr. Benson

6.      On April 28, 2009, Mr. Benson established for the benefit of his daughter, Renee Benson, and his grandchildren, Rita Benson LeBlanc and Ryan LeBlanc (the "Beneficiaries"), the following trusts: the Renee Benson 2009 Irrevocable Trust (Exhibit 1), the Rita Benson LeBlanc 2009 Irrevocable Trust (Exhibit 2), and the Ryan LeBlanc 2009 Irrevocable Trust (Exhibit 3) (collectively, the "2009 Trusts").  None of the Beneficiaries has made a contribution to any of the 2009 Trusts.  Mr. Benson is the sole donor to each of the 2009 Trusts.

7.      Defendant Rosenthal at all relevant times was and is the Trustee of each of the 2009 Trusts.

8.      Prior to January of 2015, the assets held by each of the 2009 Trusts, in large part, consisted of membership units in Zelia, L.L.C., Zelia CNP, L.L.C., Zelia Texas, L.L.C., and Zelia Properties, L.L.C. (collectively, the "Zelia Entities").

9.      The Zelia Entities were organized successively and at certain times during the period beginning in April of 2009 and continuing until December of 2012.  Mr. Benson at all times was, and currently remains, the manager of each of the Zelia Entities.  At the time each Zelia Entity was created, the 2009 Trusts were granted and issued, at Mr. Benson's direction, membership units in each Zelia Entity.

10.     The assets owned by the Zelia Entities, and in turn, held by the 2009 Trusts (by virtue of their membership unit interests in the Zelia Entities), were *all* acquired by the Zelia Entities with proceeds of loans to the Zelia Entities personally made by Mr. Benson, made by other entities controlled by Mr. Benson and funded by him, or made by third party lenders supported by guaranties made by Mr. Benson.  Without Mr. Benson's personal credit

1180579v1

support, the loans made to the Zelia Entities would not have been possible and the Zelia Entities would not have been able to acquire the assets that they own.

11.     Zelia, L.L.C. owns substantial interests in real property located in the State of Louisiana, consisting primarily of the properties and other interests comprising the New Orleans development commonly known as Benson Tower and Champions Square.

12.     Zelia CNP, L.L.C. owns a large and valuable surface parking lot at the corner of Claiborne Avenue and Poydras Street in New Orleans, Louisiana.

13.     Zelia Properties, L.L.C. owns the real estate on which various automobile dealerships are located in Jefferson Parish, Louisiana.

14.     Zelia Texas, L.L.C. owns assets in the State of Texas.

15.     Prior to January 2015, the 2009 Trusts collectively held 100% of the membership unit interests in the Zelia entities.

16.     Each of the 2009 Trusts contains a condition reserving to Mr. Benson the right to reacquire trust assets in exchange for assets of equivalent value pursuant to the following provision:

> Power to Substitute Property.   Notwithstanding any other provision of this agreement to the contrary, the Grantor [Mr. Benson] hereby reserves the right and authority, exercisable in a nonfiduciary capacity **and without the approval or consent of any person in a fiduciary capacity**, to reacquire or exchange any property of the Trust created hereunder by substituting other property of an equivalent value. . . .

(Exhibits 1-3, § 12(a)) (emphasis added).

17.     The preceding power retained by Mr. Benson in each of the 2009 Trust instruments was included therein with the express intent to subject the trusts to Internal Revenue Code § 675.

**Creation of the 2012 Trusts by Mr. Benson**

18.     On December 31, 2012, Mr. Benson established for the benefit of the Beneficiaries the following trusts:  the Renee Benson 2012 Irrevocable Trust (Exhibit 4), the Rita Benson LeBlanc 2012 Irrevocable Trust (Exhibit 5), and the Ryan LeBlanc 2012 Irrevocable Trust (Exhibit 6) (collectively, the "2012 Trusts").   None of the Beneficiaries has made a contribution to any of the 2012 Trusts.  Mr. Benson is the sole donor to each of the 2012 Trusts.

19.     Defendant Rosenthal at all relevant times was and is the Trustee of each of the 2012 Trusts.

20.     Mr. Benson donated the following property to the 2012 Trusts on or about December 31, 2012:

- 52,700 Class B non-voting units of Benson Basketball, L.L.C. to the Renee Benson 2012 Irrevocable Trust;

- 17,761 Class B non-voting unit shares of Benson Football, L.L.C. to the Renee Benson 2012 Irrevocable Trust;

- 21,250 Class B non-voting units of Benson Basketball, L.L.C. to the Rita Benson LeBlanc 2012 Irrevocable Trust;

- 7,102 Class B non-voting unit shares of Benson Football, L.L.C. to the Rita Benson LeBlanc 2012 Irrevocable Trust;

- 21,250 Class B non-voting units of Benson Basketball, L.L.C. to the Ryan LeBlanc 2012 Irrevocable Trust; and

- 7,102 Class B non-voting unit shares of Benson Football, L.L.C. to the Ryan LeBlanc 2012 Irrevocable Trust.

21.     At the time the preceding donations of non-voting interests in Benson Basketball, L.L.C. and Benson Football, L.L.C. were made in December 2012, their total value was estimated to be approximately $199,814,000.

22.     Benson Basketball, L.L.C., through its subsidiary, owns the New Orleans Pelicans, a professional basketball team in the National Basketball Association ("NBA") based in New Orleans, Louisiana.

1180579v1

23.     The New Orleans Pelicans own, possess, or occupy substantial interests in real and movable property located in the State of Louisiana, including, without limitation, the team's leasehold interests in the Smoothie King Center in New Orleans and its practice and office facilities located in Jefferson Parish.

24.     Benson Football, L.L.C., through its subsidiaries, owns the New Orleans Saints professional football team, based in New Orleans, and the WVUE television station, also based in New Orleans.

25.     The New Orleans Saints own, possess, or occupy substantial interests in real and movable property located in the State of Louisiana, including, without limitation, the team's leasehold interests in the Mercedes-Benz Superdome in New Orleans and its practice and office facilities located in Jefferson Parish.  WVUE also owns substantial interests in immovable and movable property located in New Orleans, including, for example, broadcast studios and equipment.

26.     Each of the 2012 Trusts contains a condition reserving to Mr. Benson the right to reacquire trust assets in exchange for assets of equivalent value pursuant to the following provision:

> Power to Substitute Property.   Notwithstanding any other provision of this agreement to the contrary, the Grantor [Mr. Benson] hereby reserves the right and authority, exercisable in a nonfiduciary capacity **and without the approval or consent of any person in a fiduciary capacity**, to reacquire or exchange any property of the Trust created hereunder by substituting other property of an equivalent value.   This power is intended to create grantor trust status under section 675(4) of the [Internal Revenue] Code.

(Exhibits 4-6, § 13(a)) (emphasis added).

27.     Once again, the preceding power retained by Mr. Benson in each of the 2012 Trust instruments was included with the express intent to subject the trusts to Internal Revenue Code § 675.

## Creation of the GRATs by Mr. Benson

28.     On December 31, 2012, Mr. Benson established the Tom Benson 2012 Grantor Retained Annuity Trust (the "2012 GRAT") to which Mr. Benson donated 33,535 Class B non-voting unit shares of Benson Football, L.L.C.  (*See* Exhibit 7, the 2012 GRAT).

29.     The total value of the non-voting interests in Benson Football, L.L.C. donated by Mr. Benson to the 2012 GRAT at the time the donation was made in December 2012 was estimated to be approximately $177,735,500.

30.     On July 1, 2014, Mr. Benson established the Tom Benson 2014 Grantor Retained Annuity Trust (the "2014 GRAT") to which Mr. Benson donated 12,599 Class B non-voting unit shares of Benson Football, L.L.C.  (*See* Exhibit 8, the 2014 GRAT).

31.     The total value of the non-voting interests in Benson Football, L.L.C. donated by Mr. Benson to the 2014 GRAT at the time the donation was made in July 2014 was estimated to be approximately $80,100,000.

32.     The 2012 GRAT and the 2014 GRAT instruments (collectively, the "GRATs") both contain a condition reserving to Mr. Benson the right to reacquire trust assets in exchange for assets of equivalent value pursuant to the following provision:

> Power to Substitute Property.   Notwithstanding any other provision of this agreement to the contrary and irrespective of whether the Grantor is also serving as Trustee of this Trust, the Grantor hereby reserves the right and authority, exercisable in a nonfiduciary capacity **and without the approval or consent of any person in a fiduciary capacity**, to reacquire or exchange any property of the Trust created hereunder by substituting other property of an equivalent value. This power is intended to create grantor trust status under section 675(4) of the [Internal Revenue] Code.

(Exhibits 7-8, § V(A)) (emphasis added).

33.     Once again, the preceding power retained by Mr. Benson in the GRAT instruments was included in conformity with Internal Revenue Code § 675.

34.     The Beneficiaries, through their interests in the 2009 Trusts and the 2012 Trusts, are the remainder beneficiaries of the GRATs.

35.     Defendant Rosenthal at all relevant times was and is the Trustee of each of the GRATs.

## Mr. Benson's Payment of Taxes on Income Received by the Grantor Trusts

36.     From inception of the 2009 Trusts and the 2012 Trusts, Mr. Benson paid all federal income taxes derived from the assets held by the trusts, as if he had received the income as owner of the assets.

37.     However, all income of the 2009 Trusts and the 2012 Trusts on which Mr. Benson paid taxes was never, in fact, received by him.  Instead all income was retained by the trusts for the benefit of the Beneficiaries.

38.     Qualification of the 2009 Trusts and the 2012 Trusts for the preceding beneficial tax treatment is dependent upon their classification under federal tax law as grantor trusts.  In turn, their qualification for grantor trust status is dependent upon Mr. Benson's retained right to exchange trust assets in compliance with Internal Revenue Code § 675(4).  Accordingly, all of the trust instruments governing the 2009 Trusts and the 2012 Trusts specifically (i) state that the power retained by Mr. Benson "is intended to create grantor trust status under section 675(4) of the [Internal Revenue] Code," (ii) deem any asset received by the Trustee from the Grantor to be "a proper investment," and (iii) waive any provisions of the Texas Trust Code that might otherwise require the Trustee to diversify or reinvest the trust property.  (*See* Exhibits 1-3, §§ 7(c) and 12(a); Exhibits 4-6, §§ 8(c) and 13(a)).

39.     The GRATs independently qualify for grantor trust status by virtue of Mr. Benson's being designated the income beneficiary of each of the GRATs.

### Prior History of Exchanges
### Between Mr. Benson as Grantor and Defendant Rosenthal as Trustee

40.     Pursuant to *Revenue Ruling 85-13*, assets may be sold or exchanged between a trust containing one or more of the administrative powers described in Internal Revenue Code § 675 and the trust's grantor without realizing income for federal income tax purposes.  Defendant Rosenthal, in his capacity as Trustee, has, on multiple occasions, taken advantage of this beneficial tax allowance.

41.     For example, on or about December 31, 2013, Defendant Rosenthal discharged in part the 2012 GRAT's obligation to pay Mr. Benson an annuity amount equal in value to 50.90095% of the net fair market value of the trust's assets as of the date of the trust's creation by transferring to Mr. Benson 12,599 Class B non-voting unit shares of Benson Football, L.L.C., based upon a valuation performed by Empire Valuation Consultants, without realizing tax on the exchange.   (*See* Exhibit 9, Regulations to Benson Football, L.L.C., documenting the transfer of shares from the 2012 GRAT to Mr. Benson.)

42.     On December 31, 2012, Defendant Rosenthal, as Trustee of the Renee Benson 2009 Trust, purchased 13,600 Class B non-voting unit shares of Benson Football, L.L.C. (representing 13.6% of the outstanding shares in the company) from Mr. Benson.   The consideration delivered by Defendant Rosenthal to Mr. Benson in exchange for the unit shares in Benson Football, L.L.C. was a promissory note issued by Defendant Rosenthal as Trustee payable to Mr. Benson in the amount of $72,080,000 and *bearing interest at the rate of less than one percent* (0.95%) per year.

43.     Under the terms of the promissory note delivered by Defendant Rosenthal to Mr. Benson, interest payments are due annually, but *no principal payments are due until December 30, 2021*.   The purchase agreement, signed by Defendant Rosenthal as Trustee,

- 9 -

provided that Empire Valuation Consultants would update the value of the shares sold, valuing them as of the date of the purchase agreement.  The agreement also contained a valuation adjustment clause which automatically adjusted the purchase price of the shares to their appraised value, as finally determined.

44.     The promissory note delivered by Defendant Rosenthal to Mr. Benson was secured by the purchased shares with a collateral assignment agreement signed by Defendant Rosenthal on behalf of the Renee Benson 2009 Trust.  That same day, on behalf of the 2009 Trusts, Defendant Rosenthal purchased additional assets from Mr. Benson on the same terms and conditions outlined above, including valuation adjustment clauses, as follows:

(a)     458,335 shares of Bensco, Inc. in return for an Installment Note from the Renee 2009 Trust in the original principal amount of $13,333,334.

(b)     5,450 Class B non-voting unit shares of Benson Football, L.L.C. in return for an Installment Note from the Rita 2009 Trust in the original principal amount of $28,885,000.

(c)     183,333 shares of Bensco, Inc. in return for an Installment Note from the Rita 2009 Trust in the original principal amount of $5,333,333.

(d)     5,450 Class B non-voting unit shares of Benson Football, L.L.C. in return for an Installment Note from the Ryan 2009 Trust in the original principal amount of $28,885,000.

(e)     183,333 shares of Bensco, Inc. in return for an Installment Note from the Ryan 2009 Trust in the original principal amount of $5,333,333.

(*See* Exhibits 10-18, Purchase Agreements, Promissory Notes, and Collateral Assignment Agreements).

45.     On no occasion during any of the preceding acquisitions by the trusts did Defendant Rosenthal ever contend that the trusts' promissory notes, amounting to tens of millions of dollars and secured only by the purchased assets, were not equivalent in value to the assets purchased by the trusts.  Nor on any occasion did Defendant Rosenthal object to

- 10 -

valuations of the purchased assets performed by Empire Valuation Consultants.  Nor on any occasion did Defendant Rosenthal contend that the acquisitions by the trusts were ineffective pending the completion of a valuation adjustment as provided in the purchase agreements.

### The 2015 Exchange and Reacquisition by Mr. Benson

46.   On January 11, 2015, Mr. Benson exercised his retained power to reacquire assets from the 2009 Trusts, the 2012 Trusts, and the GRATs by executing a Notice by Grantor to Trustee to Exchange Assets of the Trusts and sending the notice to Defendant Rosenthal.  (*See* Exhibit 19, Notice by Grantor to Trustee to Exchange Assets of the Trusts (the "Notice of Exchange")).  Mr. Benson's Notice of Exchange effected the immediate transfer of the reacquired trust assets to Mr. Benson, and legally bound him to deliver assets of equivalent value to the Trustee.  The Notice of Exchange specified an effective date of the exchange as January 1, 2015.   Attached to the Notice of Exchange executed by Mr. Benson was a schedule of preliminary values of all of the assets reacquired by Mr. Benson on that date, which valuations were based on the most recent valuations of the assets available to Mr. Benson.  The form of promissory notes attached to the Notice of Exchange contained a valuation adjustment clause identical to the valuation adjustment clauses employed by Defendant Rosenthal in connection with the promissory notes previously tendered to Mr. Benson, as described in paragraphs 42 through 44 above, when Defendant Rosenthal acquired assets for the trusts from Mr. Benson.

47.   On January 12, 2015, Mr. Paul Cordes, counsel for Mr. Benson, forwarded the Notice of Exchange to Defendant Rosenthal, together with an explanation of the implementation documents that Mr. Benson requested Defendant Rosenthal to execute on behalf of the 2009 Trusts, the 2012 Trusts, and the GRATs.  (*See* Exhibits 20-22, exhibits to Notice of Exchange).  The documents attached as exhibits to the Notice of Exchange consisted of the following:

1180579v1

**For Assets Reacquired by Mr. Benson from the Trusts**

(a)     Instrument transferring all Units of Benson Football, LLC to Tom Benson;

(b)     Instrument transferring all Units of Benson Basketball, LLC to Tom Benson;

(c)     Instrument transferring all Units of Zelia, LLC to Tom Benson;

(d)     Instrument transferring all Units of Zelia Properties, LLC to Tom Benson;

(e)     Instrument transferring all Units of Zelia CNP, LLC to Tom Benson;

(f)     Instrument transferring all Shares of Bensco, Inc. to Tom Benson;

(g)     Instrument transferring all Membership Interests in Zelia Texas, LLC to Tom Benson; and

(h)     Instrument transferring all Units of Benson Football, LLC from the 2014 GRAT.

Through his counsel, Mr. Benson specifically requested Defendant Rosenthal to execute the preceding transfer instruments listed in (a) through (h).

**For Assets Delivered by Mr. Benson to the Trusts**

(a)     Instrument transferring Installment Notes (resulting in cancellation of the debt each trust owed Mr. Benson), consisting of the following:

(1)     Installment Note of the Renee 2009 Trust to Mr. Benson dated December 31, 2012 in the original principal amount of $72,080,000;

(2)     Installment Note of the Renee 2009 Trust to Mr. Benson dated December 31, 2012 in the original principal amount of $13,333,334;

(3)     Installment Note of the Rita 2009 Trust dated to Mr. Benson December 31, 2012 in the original principal amount of $28,885,000;

(4)     Installment Note of the Rita 2009 Trust to Mr. Benson dated December 31, 2012 in the original principal amount of $5,333,333;

(5)     Installment Note of the Ryan 2009 Trust to Mr. Benson dated December 31, 2012 in the original principal amount of $28,885,000; and

1180579v1

> > (6)     Installment Note of the Ryan 2009 Trust to Mr. Benson dated December 31, 2012 in the original principal amount of $5,333,333.
>
> (b)     Conveyance by Tom Benson of Real Property in Blanco County transferring a ranch and valuable acreage to the 2009 Trusts;
>
> (c)     Form of Promissory Note from Mr. Benson to the 2009 Trusts and 2012 Trusts;
>
> (d)     Form of Promissory Note from Mr. Benson to the 2014 GRAT;
>
> (e)     Conveyance by Zelia Texas, LLC of Real Property in Blanco County to the 2009 Trusts; and
>
> (f)     Preliminary calculation of Values used for each asset exchanged.

(*See* Exhibits 20-22).

48.     Mr. Benson's transfer of the Installment Notes described in paragraph 47 (For Assets Delivered by Mr. Benson to the Trusts (a)(1)-(6)) resulted in the cancellation of indebtedness owed to Mr. Benson by the 2009 Trusts amounting to $94,544,000.

49.     In furtherance of Mr. Benson's agreement to substitute assets of equivalent value, Mr. Benson retained Empire Valuation Consultants to update the valuation of the reacquired assets as of January 1, 2015.  Empire Valuation Consultants, of course, is the same valuation expert relied upon by Defendant Rosenthal when he purchased the non-voting interests in Benson Football, L.L.C. from Mr. Benson on behalf the 2009 Trusts and when he satisfied the 2012 GRAT's obligation to pay Mr. Benson's annuity amount with non-voting interests in Benson Football, L.L.C.

50.     On January 24, 2015, Mr. Cordes, on Mr. Benson's behalf, delivered to Defendant Rosenthal the following additional documents supporting Mr. Benson's Notice of Exchange:

> (a)     Certification of Value signed by Mr. Benson (one per trust);

(b)     Collateral Assignment of Interest granting the trusts a security interest in certain entities owned by Mr. Benson (one per trust);

(c)     The following described Promissory Notes, containing automatic valuation adjustment clauses, signed by Mr. Benson:

(1)     Installment Note to the Renee 2009 Trust dated January 1, 2015 in the original principal amount of $148,268,960;

(2)     Installment Note to the Renee 2012 Trust dated January 1, 2015 in the original principal amount of $79,538,512;

(3)     Installment Note to the Rita 2009 Trust dated January 1, 2015 in the original principal amount of $32,316,450;

(4)     Installment Note to the Rita 2012 Trust dated January 1, 2015 in the original principal amount of $59,339,220;

(5)     Installment Note to the Ryan 2009 Trust dated January 1, 2015 in the original principal amount of $32,316,450;

(6)     Installment Note to the Ryan 2012 Trust dated January 1, 2015 in the original principal amount of $59,339,220; and

(7)     Installment Note to the 2014 GRAT dated January 1, 2015 in the original principal amount of $38,738,760.

(*See* Exhibit 23, January 24, 2015 Letter; Exhibits 24-44, Promissory Notes to the Trustee of each of the 2009 Trusts, 2012 Trusts, and GRATs, Collateral Assignments securing the Promissory Notes, and Certifications of Value to the Trustee of same Trusts).

51.     As a result of the preceding deliveries on his behalf, Mr. Benson exchanged, substituted, and delivered assets to the trusts *valued* at approximately $555,956,572 as consideration for withdrawing from the trusts the assets previously transferred to them.  Also as a result of the preceding deliveries, the notes delivered to the trusts were fully and adequately secured by collateral assignments of assets consisting, in most cases, of the same assets that were withdrawn by Mr. Benson in the Notice of Exchange.  The reference in the Notice of Exchange, and accompanying instruments, to the valuation adjustment neither suspended nor delayed the effectiveness of the exchange.  Pursuant to applicable sections of the Internal Revenue Code,

1180579v1

regulations thereunder, revenue rulings, and judicial precedents relating thereto, an exchange of assets permitted under Internal Revenue Code § 675 is effective on the date specified by the grantor, notwithstanding reference to a valuation adjustment.

### The Rejections by Defendant Rosenthal

52.     On January 19, 2015, Kevin Kennedy, counsel for Defendant Rosenthal, transmitted to Mr. Cordes a response rejecting the Notice of Exchange.  (*See* Exhibit "Q," January 19, 2015 Letter).

53.     In Mr. Kennedy's response, he expressed the contention that a promissory note is not "an appropriate trust investment," (*see* Exhibit 45), completely ignoring the clear language of the trust instruments for the 2009 Trusts, the 2012 Trusts, and the GRATs, which deem any asset received by the Trustee from the Grantor to be "a proper investment."  (*See* Exhibits 1-8).

54.     Mr. Kennedy also stated in his rejection that "[a] unilateral withdrawal of trust assets by Mr. Benson is not possible as the notice implies."  (*See* Exhibit 45).  This is also contrary to the provisions of the trust instruments for the 2009 Trusts, the 2012 Trusts, and the GRATs, all of which state that Mr. Benson's right to reacquire trust assets is exercisable "without the approval or consent of any person in a fiduciary capacity" (i.e., the trustee).  (*See* Exhibits 1-8).

55.     On February 27, 2015, Mr. Kennedy, on behalf of Defendant Rosenthal, again wrote Mr. Cordes and again rejected the Notice of Exchange, returning the notes and collateral assignments.  Mr. Kennedy further stated in his letter Defendant Rosenthal "has determined that there has not yet been an exchange of assets of equivalent value."  (*See* Exhibit 46, February 27, 2015 Letter).

1180579v1

56.     Defendant Rosenthal's position, as stated by his attorney Mr. Kennedy, is inconsistent with Defendant Rosenthal's previous actions as Trustee for the 2009 Trusts, the 2012 Trusts, and the GRATs.  Moreover, Defendant Rosenthal's positon is contrary to federal law and in violation of the terms of the trust instruments.

57.     The actions of Defendant Rosenthal in rejecting Mr. Benson's Notice of Exchange create a justiciable controversy arising under federal law and existing between the parties pursuant to the provisions of 28 U.S.C. § 2201, for which Mr. Benson seeks a resolution in this Complaint in the form of a judgment declaring that an exchange of assets occurred as of January 1, 2015, and further that he is the true and lawful owner of the assets.

## COUNT 1:  CLAIM FOR DECLARATORY RELIEF

58.     Mr. Benson re-alleges and incorporates Paragraphs 1 through 57 of this Complaint as if fully set forth herein.

59.     Mr. Benson's reacquisition of assets, as described herein, was legally effective as of January 1, 2015 as specified in the Notice of Exchange executed by Mr. Benson.

60.     Pursuant to the terms of the 2009 Trusts, the 2012 Trusts, and the GRATs, (*see* Exhibits 1-3, § 12(a); Exhibits 4-6, § 13(a); Exhibits 7-8, § V(A)), and Internal Revenue Code § 675(4), Defendant Rosenthal's rejection of the Notice of Exchange is in violation of the terms of the trust instruments and in violation of applicable federal law.

61.     Pursuant to 28 U.S.C. § 2201, Mr. Benson is entitled to judgment herein declaring that the Notice of Exchange was effective as of January 1, 2015 and that he is the true and lawful owner of the assets reacquired by him in the Notice of Exchange.

## COUNT 2:  INJUNCTIVE RELIEF

62.     Mr. Benson re-alleges and incorporates Paragraphs 1-57 of this Complaint as if fully set forth herein.

1180579v1

63.    There is no adequate remedy at law available to Mr. Benson to rectify Defendant Rosenthal's rejection of the Notice of Exchange.

64.    Mr. Benson is entitled to an injunction ordering Defendant Rosenthal to execute, on behalf of the 2009 Trusts, the 2012 Trusts, and the GRATs, and to deliver to Mr. Benson the following documents attached to Mr. Benson's Notice of Exchange:

(a)    Transfer of all Units of Benson Football, LLC to Tom Benson;

(b)    Transfer of all Units of Benson Basketball, LLC to Tom Benson;

(c)    Transfer of all Units of Zelia, LLC to Tom Benson;

(d)    Transfer of all Units of Zelia Properties, LLC to Tom Benson;

(e)    Transfer of all Units of Zelia CNP, LLC to Tom Benson;

(f)    Transfer of all Shares of Bensco, Inc. to Tom Benson;

(g)    Transfer of all Membership Interests in Zelia Texas, LLC to Tom Benson; and

(h)    Transfer of all Units of Benson Football, LLC from the 2014 GRAT.

65.    Mr. Benson is also entitled to a judgment ordering Defendant Rosenthal to sign (where applicable) and to receive, accept, and hold, on behalf of the 2009 Trusts, the 2012 Trusts, and the GRATs, the following documents:

(a)    Transfer of Installment Notes by Tom Benson;

(b)    Conveyance by Tom Benson of Real Property in Blanco County;

(c)    Conveyance by Zelia Texas, LLC of Real Property in Blanco County to the 2009 Trusts;

(d)    Collateral Assignment of Interest granting the trusts a security interest in certain entities owned by Mr. Benson (one per trust);

(e)    The following Promissory Notes signed by Mr. Benson as Maker:

(1)    Installment Note to the Renee 2009 Trust dated January 1, 2015 in the original principal amount of $148,268,960;

1180579v1

(2)     Installment Note to the Renee 2009 Trust dated January 1, 2015 in the original principal amount of $79,538,512;

(3)     Installment Note to the Rita 2009 Trust dated January 1, 2015 in the original principal amount of $32,316,450;

(4)     Installment Note to the Rita 2009 Trust dated January 1, 2015 in the original principal amount of $59,339,220;

(5)     Installment Note to the Ryan 2009 Trust dated January 1, 2015 in the original principal amount of $32,316,450;

(6)     Installment Note to the Ryan 2009 Trust dated January 1, 2015 in the original principal amount of $59,339,220; and

(7)     Installment Note to the 2014 GRAT dated January 1, 2015 in the original principal amount of $38,738,760.

66.     Finally, Mr. Benson is entitled to a judgment ordering Defendant Rosenthal to execute, on behalf of the 2009 Trusts, the 2012 Trusts, and the GRATs all further documents as may be necessary and proper to effect and to record in all applicable public records the title changes required by the exchange of assets.

### III.     PRAYER

**WHEREFORE**, Plaintiff prays for the following relief in his favor and against Defendant Rosenthal:

1.     Judgment declaring that the Notice by Grantor to Trustee to Exchange Assets of the Trusts executed by Mr. Benson was effective as of January 1, 2015;

2.     Judgment declaring that Mr. Benson is the true and lawful owner of the exchanged assets as of January 1, 2015;

3.     Judgment ordering Defendant Rosenthal to sign, on behalf of the 2009 Trusts, the 2012 Trusts, and the GRATs, and to deliver to Mr. Benson the following instruments:

1180579v1

**For Assets Reacquired by Mr. Benson from the Trusts**

(a)     Instrument transferring all Units of Benson Football, LLC to Tom Benson;

(b)     Instrument transferring all Units of Benson Basketball, LLC to Tom Benson;

(c)     Instrument transferring all Units of Zelia, LLC to Tom Benson;

(d)     Instrument transferring all Units of Zelia Properties, LLC to Tom Benson;

(e)     Instrument transferring all Units of Zelia CNP, LLC to Tom Benson;

(f)     Instrument transferring all Shares of Bensco, Inc. to Tom Benson;

(g)     Instrument transferring all Membership Interests in Zelia Texas, LLC to Tom Benson; and

(h)     Instrument transferring all Units of Benson Football, LLC from the 2014 GRAT.

4.     Judgment ordering Defendant Rosenthal to sign (where applicable) and to receive, accept, and hold, on behalf of the Trusts, the following instruments tendered to him by Mr. Benson:

(a)     Instrument transferring Installment Notes (resulting in cancellation of the debt each trust owes Mr. Benson), consisting of the following:

        (1)     Installment Note of the Renee 2009 Trust to Mr. Benson dated December 31, 2012 in the original principal amount of $72,080,000;

        (2)     Installment Note of the Renee 2009 Trust to Mr. Benson dated December 31, 2012 in the original principal amount of $13,333,334;

        (3)     Installment Note of the Rita 2009 Trust dated to Mr. Benson December 31, 2012 in the original principal amount of $28,885,000;

        (4)     Installment Note of the Rita 2009 Trust to Mr. Benson dated December 31, 2012 in the original principal amount of $5,333,333;

        (5)     Installment Note of the Ryan 2009 Trust to Mr. Benson dated December 31, 2012 in the original principal amount of $28,885,000; and

1180579v1

(6)     Installment Note of the Ryan 2009 Trust to Mr. Benson dated December 31, 2012 in the original principal amount of $5,333,333.

(b)     Certification of Value signed by Mr. Benson (one per trust);

(c)     Collateral Assignment of Interest granting the trusts a security interest in certain entities owned by Mr. Benson (one per trust);

(d)     The following described Promissory Notes, containing automatic valuation adjustment clauses, signed by Mr. Benson:

(1)     Installment Note to the Renee 2009 Trust dated January 1, 2015 in the original principal amount of $148,268,960;

(2)     Installment Note to the Renee 2012 Trust dated January 1, 2015 in the original principal amount of $79,538,512;

(3)     Installment Note to the Rita 2009 Trust dated January 1, 2015 in the original principal amount of $32,316,450;

(4)     Installment Note to the Rita 2012 Trust dated January 1, 2015 in the original principal amount of $59,339,220;

(5)     Installment Note to the Ryan 2009 Trust dated January 1, 2015 in the original principal amount of $32,316,450;

(6)     Installment Note to the Ryan 2012 Trust dated January 1, 2015 in the original principal amount of $59,339,220; and

(7)     Installment Note to the 2014 GRAT dated January 1, 2015 in the original principal amount of $38,738,760.

(e)     Conveyance by Tom Benson of Real Property in Blanco County;

(f)     Conveyance by Zelia Texas, LLC of Real Property in Blanco County to the 2009 Trusts;

5.     Judgment ordering Defendant Rosenthal to sign, execute, and deliver to Mr. Benson all further documents or instruments necessary and appropriate to effect and to record in all applicable public records the title changes required by the exchange of assets.

1180579v1

6.     That Mr. Benson be awarded all such other general, legal, and equitable relief as

may be necessary or appropriate to fully restore him to his property and rights

under law.


Dated:  March 11, 2015          /s/ Phillip A. Wittmann
                                Phillip A. Wittmann, Trial Attorney, La. Bar No. 13625
                                James C. Gulotta, Jr., La. Bar No. 06590
                                Matthew S. Almon, La. Bar No. 31013
                                STONE PIGMAN WALTHER WITTMANN L.L.C.
                                546 Carondelet Street
                                New Orleans, Louisiana  70130-3588
                                Telephone:  (504) 581-3200
                                Facsimile:  (504) 581-3361

                                *Attorneys for Thomas Milton Benson, Jr.*