## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**THOMAS BENSON, JR.**               **CIVIL ACTION**

**VERSUS**                         **NO. 15-782**

**ROBERT ROSENTHAL**            **SECTION "H"**

### ORDER AND REASONS

Before the Court is Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (R. Doc. 14). For the following reasons, the Motion is DENIED.

### BACKGROUND

This is an action for declaratory judgment in which Plaintiff, appearing as grantor of several trusts, asks this Court to issue a judgment declaring that his attempt to exchange certain assets held by those trusts for other assets of equivalent value was effective.  Plaintiff is Thomas Benson, the successful and wealthy owner of the New Orleans Saints and New Orleans Pelicans franchises. Over the course of several years, Plaintiff established various trusts for the

1

benefit of his daughter Renee Benson and his two grandchildren, Rita Benson LeBlanc and Ryan LeBlanc. Plaintiff created three trusts in 2009 (the "2009 Trusts),[1] three trusts in 2012 (the "2012 Trusts"),[2] a Grantor Retained Annuity Trust in 2012 ("2012 GRAT Trust"),[3] and a Grantor Retained Annuity Trust in 2014 ("2014 GRAT Trust").[4] Notwithstanding the dispute at issue here, these trusts hold ownership interests in various entities that in turn own a substantial amount of Louisiana property, including the New Orleans Saints and Pelicans franchises, the New Orleans Fox television affiliate, automobile dealerships, and the Benson Tower and Champions Square development.[5] Plaintiff established these trusts while he was a domiciliary of Texas and asked Defendant Robert Rosenthal, a Texas lawyer, to serve as trustee.[6]

In January of 2015, Plaintiff sent correspondence to Defendant, requesting

---

[1] The trusts are the Renee Benson 2009 Irrevocable Trust, the Rita Benson LeBlanc 2009 Irrevocable Trust, and the Ryan LeBlanc 2009 Irrevocable Trust.

[2] The trusts are the Renee Benson 2012 Irrevocable Trust, the Rita Benson LeBlanc 2012 Irrevocable Trust, and the Ryan LeBlanc 2012 Irrevocable Trust.

[3] The Tom Benson 2012 Grantor Retained Annuity Trust.

[4] The Tom Benson 2014 Grantor Retained Annuity Trust.

[5] This Court notes that the parties dispute the effectiveness of the exchange attempted by Plaintiff and therefore likewise dispute whether the trusts at issue still own the assets affected by the exchange. For simplicity, this Court will refer throughout this order to these assets as if they are presently owned by the trusts. It expressly notes that this is not intended as a finding of fact.

[6] After filing this lawsuit, Rosenthal resigned as trustee of all of the 2012 Trusts. Pursuant to Federal Rule of Civil Procedure 25(c), Plaintiff joined an additional trustee, Mary R. Rowe, who was subsequently appointed as trustee of the 2012 Trusts. Plaintiff correctly states that a finding of personal jurisdiction over Rosenthal will operate as a finding of personal jurisdiction over Rowe, as a substituted successor-in-interest. *See* ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE § 1958 (3d ed.).

that he exchange the aforementioned trust assets for promissory notes of equivalent value.  Defendant refused to make the exchange, stating that a unsecured promissory note is "not an appropriate trust investment" and that Defendant must "make his own independent verification that the assets to be exchanged are of equivalent value [with the trust assets]."[7]  Plaintiff has asked this Court to declare that the exchange was effective pursuant to the terms of the trusts, that Plaintiff is the lawful owner of the exchanged assets, and that Defendant must sign various instruments to effectuate the transfer.

Defendant has filed a Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

## LEGAL STANDARD

"Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists."[8]  When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing . . . the plaintiff need only make a prima facie showing of personal jurisdiction. [9]  "The allegations of the complaint, except insofar as controverted by opposing affidavits, must be taken as true, and all conflicts in the facts must be resolved in favor of the plaintiff[] for purposes of determining whether a prima facie case for personal jurisdiction

---

[7] R. Doc. 1-47.
[8] *Luv N'care, Ltd. v. Insta–Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)).
[9] *Guidry v. U.S. Tobacco, Co., Inc.*, 188 F.3d 619, 625 (5th Cir. 1999).

has been established."[10]   "In determining whether personal jurisdiction exists, the trial court is not restricted to a review of the plaintiff's pleadings."[11]   The Court may consider matters outside the complaint, including affidavits, interrogatories, depositions, or any combination of the recognized methods of discovery.[12]

Jurisdiction over a non-resident defendant is proper when (1) the defendant is amenable to service of process under the long-arm statute of the forum state, and (2) the exercise of personal jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment.[13]   In the instant case, "these two inquiries merge into one because Louisiana's long-arm statute permits service of process coterminous with the scope of the due process clause."[14]

"The Due Process Clause of the Fourteenth Amendment protects a corporation, as it does an individual, against being made subject to the binding judgments of a forum with which it has established no meaningful 'contacts, ties, or relations.'"[15]   A court may exercise personal jurisdiction over a non-resident defendant when (1) the defendant has purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with the

---

[10] *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985) (citing *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1270 (5th Cir. 1983)).

[11] *Jobe v. ATR Mktg., Inc.*, 87 F.3d 751, 753 (5th Cir. 1996).

[12] *Id.* (citing *Colwell Realty Invs. v. Triple T. Inns of Ariz.*, 785 F.2d 1330 (5th Cir. 1986)).

[13] *Dalton v. R&W Marine, Inc.*, 897 F.2d 1359, 1361 (5th Cir. 1990).

[14] *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 786 (5th Cir. 1990); see also La. Rev. Stat. § 13:3201.

[15] *Pervasive Software Inc. v. Lexware GMBH & Co. KG*, 688 F.2d 214, 220 (5th Cir. 2012) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)).

4

forum state; and (2) exercising personal jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice."[16]

"Minimum contacts" can be established through specific jurisdiction or general jurisdiction.[17] Specific personal jurisdiction exists when a defendant has purposely directed its activities, or availed itself of the privileges of conducting its activities, toward the forum state and the controversy arises out of or is related to those activities.[18] General personal jurisdiction exists when the defendant has engaged in continuous and systematic activities in the forum state, regardless of whether such activity is related to the plaintiff's cause of action.[19]

"If a nonresident defendant has sufficient related or unrelated minimum contacts with the forum, we must then consider whether the 'fairness' prong of the jurisdictional inquiry is satisfied."[20] The fairness inquiry is determined by analyzing several factors: (1) the burden upon the nonresident defendant of litigating in the forum state; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) the judicial system's interest in obtaining an efficient resolution of controversies; and (5) the shared interest of the states in furthering fundamental substantive social policies.[21]

---

[16] *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (quoting *Int'l Shoe*, 326 U.S. at 316).

[17] *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000).

[18] *Burger King Corp. v. Rudzewicz*, 471 U.S. 262, 472 (1985).

[19] *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984).

[20] *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994) (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 105 (1987)).

[21] *Bullion v. Gillespie*, 895 F.2d 213, 216 n.5 (5th Cir. 1990) (internal citations omitted).

**LAW AND ANALYSIS**

Plaintiff does not make any serious allegations that this Court has general jurisdiction over Defendant, and indeed, admitted at oral argument that this case does not present issues of general jurisdiction. Accordingly, this Court will focus its analysis on specific jurisdiction.

Specific personal jurisdiction exists when a defendant has purposely directed its activities, or availed itself of the privileges of conducting its activities, toward the forum state and the controversy arises out of or is related to those activities. "Although a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have 'certain minimum contacts' . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[22]  The Fifth Circuit has promulgated a three-step analysis for determining whether contacts are sufficient for specific jurisdiction:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.[23]

**A.     Minimum Contracts**

Defendant argues that this Court lacks personal jurisdiction over him

---

[22] *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014).

[23] *E.g.*, *Bustos v. Lennon*, 538 F. App'x 565, 567 (5th Cir. 2013).

because he does not have the requisite minimum contacts with the state of Louisiana. Defendant argues that he is a Texas resident who serves as a trustee of Texas trusts, which benefit Texas residents. Defendant does not live, work, or own property in Louisiana. In addition, Defendant points to the following facts to establish the lack of contact that this matter has with the state of Louisiana: Plaintiff was a Texas resident at the time the trusts were created; the trusts were created in Texas; the trusts provide that they are subject to Texas law; Defendant was appointed and accepted his appointment as trustee in Texas; the trusts own shares in several Texas companies; Plaintiff's request to exchange assets was sent to Defendant in Texas; and Defendant rejected the exchange in Texas.

In response, Plaintiff points in large part to the assets held by the trusts for which Defendant serves as trustee. The trusts hold interests in entities that own interests in the Saints, the Pelicans, the Benson Tower development, the New Orleans Fox television affiliates, and other pieces of immovable property in Louisiana. In addition, many of the LLCs and corporations in which the trusts hold interests are Louisiana entities. Plaintiff asserts that Defendant administered these Louisiana assets as trustee and that it is these assets that make up the value of the trusts. Plaintiff also alleges that Defendant attended monthly meetings in Louisiana with the trust beneficiaries to discuss their future ownership of the Saints and Pelicans franchises. Defendant also participated in conference calls and executed numerous documents on behalf of the trusts in connection with various transactions involving Louisiana property.

7

Plaintiff likens Defendant's involvement to that of a business owner administering his assets from out-of-state.

In addition, Plaintiff contends, through the affidavit of the President of the New Orleans Saints and Pelicans Dennis Lauscha, that the New Orleans Saints paid the law firm of which Defendant is a partner a monthly retainer of $20,000, which increased to $25,000 in October 2014, and that this amount included payment for Defendant's administration of the trusts.  In response to this contention, Defendant submitted a buzzer-beater, post-hearing memorandum and affidavit from a partner of the law firm asserting that the firm had "never billed" Plaintiff or any of his entities for the time that Defendant spent administering the trusts. It further stated that neither Plaintiff nor any of his entities have ever paid the law firm for the time Defendant spent administering the trust.  The Court finds that the Defendant's artfully worded affidavit fails to contradict the affidavit of Mr. Lauscha. Further, Plaintiff responded with evidence showing that one of Plaintiff's entities paid the law firm an amount beyond the retainer for services rendered in relation to the Benson Tower, a trust asset.  Notwithstanding the fact that any conflict in the facts must be resolved in favor of the plaintiff, it is clear to this Court that Defendant's trust administration services were compensated as part of the retainer paid to the law firm by the New Orleans Saints.  Accordingly, Defendant was paid for his trust administration by a Louisiana-based sports franchise.

Lastly, Defendant sent notice that he refused to make the exchange at issue in this case to Plaintiff's attorney in Louisiana. Plaintiff contends that both

he and his granddaughter Rita LeBlanc were citizens of Louisiana at the time that he requested the exchange.   Thus, Defendant's refusal to make the exchange deprived Plaintiff, a Louisiana citizen, of control and ownership of Louisiana-based assets.

This Court must now consider whether these contacts are sufficient to constitute minimum contacts such that jurisdiction can be exercised over Defendant.   The "minimum contacts" prong is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."[24]   The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state.[25] This test "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'"[26]

Defendant cites *Hanson v. Denckla* to support the argument that he does not have minimum contacts with the forum state.[27]   In *Hanson*, the United States Supreme Court held that a Florida court could not exercise jurisdiction over a Delaware trustee.[28]   In that case, the settlor created a trust in Delaware and chose a Delaware trustee.[29]   The settlor later moved to Florida where she

---

[24] *Burger King*, 471 U.S. at 474–75 (citation omitted).
[25] *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).
[26] *Burger King*, 471 U.S. at 475 (citation omitted).
[27] *Hanson v. Denckla*, 357 U.S. 235, 238 (1958).
[28] *Id.* at 256.
[29] *Id.* at 238.

executed a power of appointment related to the trust and engaged in other administrative acts.[30]  The corpus of the trust was composed of securities, which were never held or administered in Florida.[31]  The Court found the trustee's Florida contacts to be insufficient to exercise personal jurisdiction there, noting that the trust agreement was entered into without any connection with the forum state and that the first relationship between Florida and the trust agreement arose when the settlor unilaterally moved to Florida.[32]

Defendant states that, like the trustee in *Hanson*, he has no property or office in Louisiana, and the trusts were executed in Texas while the settlor was a domiciliary there.  Defendant contends therefore that only Benson's unilateral acts connect Defendant and the trust agreements to Louisiana.  The Court cannot agree with Defendant's latter contention.  In this case, unlike in *Hanson*, many of the trust assets at issue are located in the forum state.  The trusts hold, and have held since their creation, substantial assets in Louisiana.  It cannot, therefore, be said that the trust agreements have no connection with the forum state.  It was not merely Benson's unilateral decision to move to Louisiana that gave Defendant and the trust agreements contacts with that state.

In addition, the assets of the trusts at issue here—ownership interests in closely held companies—differ starkly from the securities held by the trust in *Hanson*.  At oral argument, Plaintiff's counsel attempted to liken this situation to a trust holding stock in a publicly traded company, such as Apple, noting that

---

[30] *Id.* at 239.
[31] *Id.* at 251.
[32] *Id.* at 252–54.

such would not subject the trustee to jurisdiction at Apple's headquarters in California. This Court finds that this analogy misses the point. The ownership interests held by the trusts at issue here are not securities in publicly traded companies. The trusts are substantial owners in closely held companies. In fact, the 2009 Trusts own 100% of the ownership interests of four entities (three of which are Louisiana LLCs), which in turn own Louisiana property such as the Benson Tower development in New Orleans. Accordingly, *Hanson* is significantly distinguishable from the case at hand.

This Court is, however, persuaded by the Supreme Court's decision in *Burger King v. Rudzewicz*, in which it held that jurisdiction is appropriate over defendants who reach out beyond their state and "into another by, for example, entering a contractual relationship that 'envisioned continuing and wide-reaching contracts' in the forum State."[33]  In *Burger King*, the Supreme Court held that a Florida court had personal jurisdiction over a Michigan franchisee who entered into a franchise agreement with the Florida-based Burger King corporation, despite the fact that the franchisee had never even visited Florida.[34] The Supreme Court stated that the "franchise dispute grew directly out of 'a contract which had a substantial connection with that State.'"[35]  It stated that the franchisee voluntarily "reach[ed] out beyond" Michigan and negotiated with a Florida corporation to enter into "a relationship that envisioned continuing and

---

[33] *Walden*, 134 S. Ct. at 1122 (quoting *Burger King*, 471 U.S. at 480).

[34] *Burger King*, 471 U.S. at 487.

[35] *Id.* at 479 (quoting *McGee v. International Life Insurance Co.*, 355 U.S. 220, 223 (1957)).

wide-reaching contacts with Burger King in Florida."[36]  In addition, it noted that the franchisee's breach of the franchise agreement caused "foreseeable injuries to the corporation in Florida."[37]  "It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.[38]

This Court holds that, like the defendant in *Burger King*, Defendant purposefully availed himself of the benefits of the state of Louisiana by accepting the position of trustee of the trusts at issue.  In the agreements creating the 2012 Trusts and both of the GRAT Trusts, Plaintiff expressly delivered certain listed property on the day of the trusts' creation to Defendant as trustee.  This property, which was listed in the appendixes of the trust documents,  included units of ownership of Benson Basketball, LLC and/or Benson Football, LLC. Benson Football, LLC owns the New Orleans Saints franchise, a lease of the Mercedes-Benz Superdome in New Orleans, and the WVUE television station in New Orleans.  Benson Basketball, LLC owns the New Orleans Pelicans franchise, a lease of the New Orleans Smoothie King Center, and practice facilities near New Orleans.  Defendant signed each of these trust documents as trustee and by their terms agreed to "administer" or "manage" the property."[39] The initial ownership interests contained in the trusts were specifically listed

---

[36] *Id.* at 480.
[37] *Id.* at 479.
[38] *Id.*
[39] *See* R. Docs. 1-6, 1-7, 1-8, 1-9, 1-10.

and appended to each of these agreements.  Accordingly, Defendant accepted the responsibility of managing trusts that he knew contained ownership interests in substantial Louisiana property. "It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State."[40]

Further, Defendant should have reasonably expected that his position as trustee would necessarily entail "continuing and wide-reaching contracts" with the state of Louisiana.  Indeed, Defendant has continued to be connected to the forum state through his administration of the trusts at issue.  Plaintiff submits numerous documents and consents executed by Defendant in his capacity as trustee to authorize dealings involving various trust assets.  For example, in 2012, Defendant signed a purchase agreement on behalf of the Renee Benson 2009 Irrevocable Trust, in which the trust purchased shares of Benson Football, LLC—the owner of the New Orleans Saints—from Plaintiff.  Additionally, Defendant attended monthly meetings regarding trust assets in New Orleans and was compensated for his services by the New Orleans Saints.  Defendant could have foreseen that his failure to perform his duties as trustee in accordance with the trust agreements would affect both property and people in Louisiana.  Accordingly, this Court holds that Defendant had sufficient minimum contacts with the forum state such that this Court can exercise personal jurisdiction.

---

[40] *McGee*, 355 U.S. at 223.

## B. Arising Out Of or Related To

Having determined that Defendant has the requisite minimum contacts required to exercise personal jurisdiction, this Court must now consider whether the Plaintiff's cause of action arises out of or results from the Defendant's forum-related contacts.  There are three schools of thought regarding what "arising out of or related to" means in the context of specific jurisdiction, and the Fifth Circuit remains a proverbial free agent, having not yet expressly taken a position.  The Supreme Court has likewise declined to define the term.[41]

Some circuits, the First and Sixth included, use a proximate cause standard in determining whether a cause of action arises out of the defendant's contacts with the forum state.[42]   "Some hold the defendant's contacts must be the 'legal cause' of the plaintiff's injury."[43]  This test has been criticized for being overly restrictive and unnecessarily limiting the ordinary meaning of "arising out of."[44]

Other circuits, such as the Ninth, subscribe to a more relaxed test and require only that the defendant's contacts be a "but for" cause of the plaintiff's

---

[41] *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 416, n.10 ("Absent any briefing on the issue, we decline to reach the questions (1) whether the terms "arising out of" and "related to" describe different connections between a cause of action and a defendant's contacts with a forum, and (2) what sort of tie between a cause of action and a defendant's contacts with a forum is necessary to a determination that either connection exists.").

[42] *See Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 507–08 (6th Cir. 2014) ("We disagree because more than mere but-for causation is required to support a finding of personal jurisdiction. To the contrary, the plaintiff's cause of action must be proximately caused by the defendant's contacts with the forum state."); *Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708, 716 (1st Cir. 1996).

[43] *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 318 (3d Cir. 2007).

[44] *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 385 (9th Cir. 1990) *rev'd sub nom. Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585 (1991).

harm.[45]  "[T]he standard is satisfied when the plaintiff's claim would not have arisen in the absence of the defendant's contacts."[46]  This test has been criticized for being overinclusive and lacking a limiting function.[47]

Finally, still other circuits adhere to a "substantial connection" test for the determination of relatedness. The question asked in the application of this standard "is whether the tie between the defendant's contacts and the plaintiff's claim is close enough to make jurisdiction fair and reasonable."[48]  The degree of relatedness required by this sliding scale is inversely proportional to the quality of the defendant's contacts with the forum.[49]  For instance:

> Where the defendant has had only limited contacts with the state it may be appropriate to say that he will be subject to suit in that state only if the plaintiff's injury was proximately caused by those contacts. Where the defendant's contacts with the jurisdiction that relate to the cause of action are more substantial, however, it is not unreasonable to say that the defendant is subject to personal jurisdiction even though the acts within the state are not the proximate cause of the plaintiff's injury.[50]

This approach has been criticized for failing to maintain a distinction between specific and general jurisdiction.[51]

While many circuits have expressly adopted some variation of these tests,

---

[45] *Id.*; *Doe v. Am. Nat. Red Cross*, 112 F.3d 1048, 1051 (9th Cir. 1997) ("In *Shute*, this court explicitly adopted the "but for" test for determining whether a plaintiff's injury arises out of a defendant's forum-related activities.").

[46] *O'Connor*, 496 F.3d at 319.

[47] *Id.* at 322; *Beydoun*, 768 F.3d at 508.

[48] *O'Connor*, 496 F.3d at 319.

[49] *Id.* at 320.

[50] *Chew v. Dietrich*, 143 F.3d 24, 29 (2d Cir. 1998).

[51] *O'Connor*, 496 F.3d at 321–22; *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1078 (10th Cir. 2008).

the Fifth Circuit has not.  Many other courts, however, have read the Fifth Circuit's analyses to infer a preference for the "but for" standard.[52] For instance, many have taken a footnote in *Prejean v. Sontrach, Inc.*—stating that a tort suit can arise out of a contract if "the contract is a 'but for' causative factor for the tort"—as evidence of the circuit's preference.[53]

This Court agrees that the Fifth Circuit would likely subscribe to a "but for" analysis and also finds the "but for" test to be the superior analysis.  The "but for" standard ensures that the defendant's contacts with the forum have at least a minimal link to the plaintiff's cause of action, without requiring that defendant's contacts directly cause or give rise to the plaintiff's claims.[54] Although this standard can be overinclusive, it is limited by the requirement that the exercise of personal jurisdiction not offend traditional notions of fair play and substantial justice.[55] "If the connection between the defendant's forum

---

[52] *See, e.g.*, *Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708, 714 (1st Cir. 1996); *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 103 (3d Cir. 2004) ("At the other end of the spectrum, the Courts of Appeals for the Fifth and Ninth Circuits formulate a more expansive interpretation of "arise out of or relate to," under which a non-resident defendant's forum contacts are sufficient if they provide a "but for" cause for plaintiff's injury."); *Silver v. Brown*, 382 F. App'x 723, 731 (10th Cir. 2010); *FMC Int'l A.G. v. ABB Lummus Global, Inc.*, No. 04-3896, 2005 WL 1745462, at *5 (S.D. Tex. July 22, 2005) ("The Fifth Circuit appears to have adopted a "but-for" causation test to determine if the contact is sufficiently related to the plaintiff's cause of action."); *Spell v. Willbros USA, Inc.*, No.07-1509, 2008 WL 2627718, at *3 (S.D. Tex. June 30, 2008); *Breathwit Marine Contractors, Ltd. v. Deloach Marine Servs., LLC*, 994 F. Supp. 2d 845, 851 (S.D. Tex. 2014).

[53] *See, e.g.*, *Nowak*, 94 F.3d at 714; *Spell*, 2008 WL 2627718, at *3. *But see Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1224 (11th Cir. 2009) ("The *Prejean* opinion did not specifically consider relatedness as part of a due process analysis but, instead, addressed the meaning and application of the Texas long-arm statute.").

[54] *O'Connor*, 496 F.3d at 322.

[55] *Shute*, 897 F.2d at 385.

related activities is 'too attenuated,' the exercise of jurisdiction would be unreasonable, and therefore in violation of due process."[56]

In *Trinity Industries, Inc. v. Myers & Associates, Ltd.*, the Fifth Circuit applied a but-for causation standard to facts that are relevant here.[57] In *Trinity*, Trinity Industries ("Trinity"), a Texas-based corporation, sued its former law firm Myers & Associates ("Myers"), an Illinois firm, after it allegedly counseled a Pennsylvania competitor to sue Trinity.[58] At the time of the dispute, Myers had represented Trinity in various patent law matters over the course of eight years, and it estimated it was handling about 40 matters for Trinity.[59] Throughout its representation, Myers communicated with Trinity in Texas through phone, mail, and occasional meetings in Dallas. Myers billed Trinity in Texas and was paid from Texas.[60] The lower court held that specific jurisdiction did not exist because the dispute arose out of Myers's contacts with the competitor in Pennsylvania or Illinois, not its contacts with Trinity in Texas.[61] The Fifth Circuit reversed, holding that plaintiff's claims arose out of defendant's contacts with Texas.[62] It stated that: "The essence of Trinity's complaint is that its own lawyers counseled its competitor in bringing adverse litigation. There would be no injury or basis for a claim *but for* the fact that Myers . . . represented Trinity in Texas before and during their engagement by

---

[56] *Id.*

[57] *Trinity Indus., Inc. v. Myers & Associates, Ltd.*, 41 F.3d 229 (5th Cir. 1995).

[58] *Id.* at 230.

[59] *Id.* at 230–31.

[60] *Id.* at 231.

[61] *Id.*

[62] *Id.* at 231–32.

[the competitor]."[63]

This Court finds that the *Trinity* analysis suggests a holding in this case that Plaintiff's cause of action arises out of Defendant's contacts with the forum state. Indeed, *but for* Defendant's agreement to serve as the trustee of Plaintiff's trusts, this dispute would not have occurred. If Defendant had neither agreed to administer nor actively administered the trusts and their Louisiana assets, Plaintiff would not be seeking a declaratory judgment against him for his instant failure to administer the trusts as Plaintiff requested. Plaintiff's cause of action seeking a judgment forcing Defendant to comply with the trust agreements and exchange certain Louisiana assets for promissory notes of equivalent value is a direct result of Defendant's service as trustee. Plaintiff's Complaint specifically alleges that Defendant's refusal to make the requested exchange is inconsistent with his previous actions as trustee. Accordingly, this Court holds that Plaintiff's cause of action arises out of Defendant's contacts with the forum state.

This Court notes, however, that even if the Fifth Circuit were to favor a different definition for "arising out of or related to," jurisdiction would still be appropriate here. These facts meet the "substantial connection" test because Defendant's contacts with Louisiana are sufficiently closely related to Plaintiff's cause of action to make jurisdiction reasonable. To be sure, a substantial amount of the assets held by the trusts at issue are located in Louisiana, the settlor and one beneficiary are domiciled in Louisiana, many of the assets that Plaintiff seeks to exchange for promissory notes are located in Louisiana, and

---

[63] *Id.* (emphasis added).

the communications regarding the disputed exchange were sent to and from Louisiana.

Defendant's contacts with the forum could also be said to be the proximate cause of the Plaintiff's cause of action.  To be sure, the correspondence that Defendant's counsel sent to Louisiana declining to make the Plaintiff's requested exchange directly caused the dispute at issue here.  The Fifth Circuit has stated that "[a] single act directed at the forum state can confer personal jurisdiction so long as that act gives rise to the claim asserted."[64]

### C. Traditional Notions of Fair Play and Substantial Justice

Finally, this Court must consider whether the exercise of jurisdiction over Defendant would be fair and reasonable.

> In determining whether or not exercise of jurisdiction is fair and reasonable, defendants bear the burden of proof and it is rare to say the assertion [of jurisdiction] is unfair after minimum contacts have been shown. In this inquiry we examine five factors: (1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies.[65]

Plaintiff has shown that Defendant traveled to Louisiana on several occasions to attend meetings regarding trust assets.  He cannot now say that he would be unduly burdened by traveling here for the purpose of defending himself in this litigation.  In addition, it cannot be disputed that Louisiana, the forum state, has

---

[64] *E.g., Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007).

[65] *McFadin v. Gerber*, 587 F.3d 753, 759–60 (5th Cir. 2009) (internal quotations omitted).

a significant interest in litigating the issues presented in this case—namely, the ownership of substantial property within its bounds. Accordingly, the exercise of jurisdiction over Defendant does not violate the traditional notions of fair play or substantial justice. This Court finds that Plaintiff has established a prima facie case of personal jurisdiction over Defendant.

## CONCLUSION

For the foregoing reasons, this Motion is DENIED.

New Orleans, Louisiana, this 8th day of July, 2015.

_____

**JANE TRICHE MILAZZO**

**UNITED STATES DISTRICT JUDGE**

20