UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

THOMAS MILTON BENSON, JR.                          CIVIL ACTION

VERSUS                                             NO. 15-782

ROBERT A. ROSENTHAL ET AL.                         SECTION "H" (2)

## ORDER AND REASONS ON MOTIONS

The plaintiff in this case is Thomas M. Benson, Jr., ("Benson") in his capacity as grantor of the 2009 and 2012 Irrevocable Trusts of Renee Benson, Rita Benson LeBlanc and Ryan LeBlanc, and of the Tom Benson 2012 and 2014 Grantor Retained Annuity Trusts.  Benson seeks declaratory and injunctive relief to establish the validity of his proposed substitution of assets from and into the subject trusts.  The defendants are (1) Robert A. Rosenthal, in his capacity as trustee of the 2009 and 2012 Irrevocable Trusts of Renee Benson, Rita Benson LeBlanc and Ryan LeBlanc, and of the Tom Benson 2012 and 2014 Grantor Retained Annuity Trusts and (2) Mary R. Rowe, in her capacity as Trustee of the Renee Benson 2012 Irrevocable Trust, the Rita Benson LeBlanc 2012 Irrevocable Trust, and the Ryan LeBlanc 2012 Irrevocable Trust.  The trusts were formed and granted and the trustees were appointed under Texas law.  The named beneficiaries of the trusts are Benson's daughter and grandchildren.

It is undisputed that Benson has the authority to substitute trust assets.  The principal issue around which all claims and defenses revolve in this case is whether the property Benson proposes to substitute for trust assets is equivalent in value to the

previously granted trust assets, which include the New Orleans Saints football club and the New Orleans Pelicans basketball organization, among other things.

Three discovery motions are pending before me:  (1) Defendant Rosenthal's Motion to Compel Benson; New Orleans Louisiana Saints, LLC; and Louisiana Media, Inc. to Produce Responsive Documents, Record Doc. No. 70; (2) Plaintiff's Motion for a Discovery Sequencing Order and for Protective Order, Record Doc. No. 85; and (3) both Defendants' Motion for a Discovery Sequencing Order, Record Doc. No. 86. Written opposition memoranda were filed as to all three motions, Record Doc. Nos. 87, 90-91, and oral argument was conducted on March 16, 2016.  Benson provided a supplemental privilege log that Rosenthal filed into the record with his motion for leave to file a reply memorandum, which was permitted.  Record Doc. Nos. 92, 95, 96.

Having considered the record, the applicable law, the written submissions of the parties and the oral representations of counsel during the hearing, **IT IS ORDERED** that the motions are determined as follows:

(A)    DEFENDANT'S MOTION TO COMPEL

Rosenthal seeks an order requiring plaintiffs to (1) produce additional documents in response to (a) 20 separate requests for production contained in their second set of requests to Benson individually; specifically, Requests Nos. 2, 4-11, 16, 17, 20-26, 33 and 38; and (b) two subpoenas duces tecum issued separately to two non-party companies owned by Benson and/or his interests:  (i) New Orleans Saints L.L.C.;

specifically, Items Nos. (III) 1, 7, 17, 18, 22, 25, 27, 42 and 44 in Exhibit "A" to that subpoena; and (ii) Louisiana Media Company L.L.C.; specifically Items Nos. (III) 1, 3-7, 9, 11, 12, 16-21, 24, 27 and 28 in Exhibit "A" to that subpoena; (2) produce responsive documents "improperly withheld on privilege grounds," and (3) "provide a full privilege log" that includes all  materials withheld on privilege or work product grounds, without regard to time restrictions.  Record Doc. Nos. 70 at p. 2; 70-1 at pp. 1-2, 9, 25.

Benson and the subpoena recipients have asserted various objections to the subpoenas and requests for production.  Benson also asserts that complete responses have been made to some requests; argues that only truly privileged or work product materials have been withheld; and states that his privilege log is rightly limited only to documents that predate December 5, 2014, the date Benson claims litigation was anticipated, in part because "[t]here is no legitimate dispute that all post-filing, withheld communications in this case have been in furtherance of pending litigation" and because providing a full log including post-suit materials would be "burdensome and wasteful."  Record Doc. No. 87 at pp. 16-18.

(1)   Requests for Production to Benson

The disputes that are the subject of this motion center principally on proportionality and privilege.  Permissible discovery extends only to that which is non-privileged, relevant to claims and defenses in the case and within the applicable Rule's proportionality limits, regardless whether those limits arise from the indistinguishable

standards of Fed. R. Civ. P. 26(b)(1) and (b)(2)(C) as they existed at the time this case was filed or in those same Rules as presently configured.

Weighing the factors relevant to the proportionality requirement leads to the conclusion that, while some of defendant's individual production requests are proportionally appropriate, the requests to Benson and those included in the two subpoenas, viewed as a whole, are excessive and beyond what is necessary and beneficial to resolution of this case, which focuses on the value of specifically identified assets.

Specifically, the focus and needs of the case are narrow:  the value of the particular assets in the trusts and the proposed substitution.  Those assets are identified specifically in the pleadings.  They do <u>not</u> include <u>all</u> 21 of the "Benson companies" identified in the requests, so that detailed discovery about the financial transactions of those companies is <u>not</u> important to resolving the lawsuit's issues.  Benson appears to have superior resources, but it also appears that each side has been fully capable of devoting significant and more than sufficient resources to this litigation.  On one hand, it is possible to view the amount in controversy as enormous, because the value of the trust assets is large.  On the other hand, it is also possible to view the amount in controversy as zero.  No monetary relief is sought.  The proposed transfer of assets will either be declared valid because the swapped assets are equivalent (<u>i.e.</u>, a value wash) or invalid, in which case no money or property will change hands and the status quo will be maintained.  Although the case has garnered public interest, its outcome truly has importance only to the small

handful of involved members of the Benson family and the two trustees.  Under these circumstances, I find that portions of the disputed discovery, especially the subpoenas, are out of proportion to the needs of the case and outweigh likely benefit.  Fed. R. Civ. P. 26(b)(1) and (2)(C).

As to privilege, the express exclusion of privileged and work product materials from the scope of discovery in Rule 26(b)(1) recognizes the importance of those two doctrines to the very nature of our adversary system.  Benson is justified in carefully asserting these important objections, especially in a case involving transactions in which lawyers have been deeply involved, both as advisors and primary actors, and will testify as fact witnesses.  Defendant's blithe dismissal in his motion papers of these important objections and imprecise commingling of the essential elements of the three separate and distinct privilege and work product doctrines are unwarranted.  See, e.g., Record Doc. No. 70-1 at p. 21 ("many of the communications at issue occurred years before litigation was anticipated," referring to "communications re: establishment of trusts," thus mixing an inapplicable component of the work product doctrine with a privilege objection); id. at pp. 22-23 (commingling the standards of Rule 26(b)(**4**) applicable to communications between a lawyer and an expert with the separate standards of Rule 26(b)(**3**) concerning trial preparation materials prepared by a party's representative).

Defendant's characterization of Benson's discovery responses as "playing games," Record Doc. No. 70-1 at pp. 10-11, is inaccurate and misplaced lawyer hyperbole.  When

faced with requests for production that were extremely broad in their scope and numbers, Benson rightly asserted some objections, but not some others.[1]   He nevertheless attempted to cooperate in the formulation of reasonably proportional responses, while making the kind of ongoing search and rolling production that are common and understandable in cases involving discovery of voluminous documents or electronically stored information.   I assess defendant's complaints about the alleged deficiencies in Benson's responses against the foregoing standards and findings and applying the additional legal standards set out below.

The motion is denied as to Requests for Production Nos. 2, 4 through 11 and 26 submitted to Benson individually, subject to the order contained herein.   Benson's counsel stated in their opposition memorandum, signed pursuant to Fed. R. Civ. P. 11, that "with [his] latest document production, he has produced all responsive, non-privileged documents in his care, custody or control that he has located in response to request numbers 2, 4-11 and 26."   Record Doc. No. 87 at p. 7.   This response is sufficient, as long as it is true and provided in the certified form required by Fed. R. Civ. P. 26(g).   However, Benson's current Rule 34 written responses, Record Doc. No. 70-3,

---

[1]Benson preceded his responses with general objections, which only obfuscate and confuse both the defendants and the court concerning what objections plaintiff is actually making, what materials he has actually produced and whether a complete response has been made.   "In every respect these objections are text-book examples of what federal courts have routinely deemed to be improper objections." St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp., 198 F.R.D. 508, 512 (N.D. Iowa 2000) (citations omitted); see also McLeod, Alexander, Powel & Apffel, P.C. v. Quarles, 894 F.2d 1482, 1485 (5th Cir. 1990) (The "party resisting discovery must show specifically how . . . each [request] is not relevant or how each question is overly broad, burdensome or oppressive.") (citation omitted).

are vague and include objections that obscure their meaning and undermine the ability of defendants and the court to rely upon them.  In addition, defendants have complained that Benson's document production has been "intermittent" with "[r]esponsive documents . . . strewn throughout the production, often in no discernible order."  Record Doc. No. 70-1 at pp. 10-11.  Accordingly, **IT IS ORDERED** that Benson must provide defendants with new written responses to these requests, without objections, except as to privilege and work product, if any, and signed pursuant to Fed. R. Civ. P. 26(g), (a) clearly stating that <u>all</u> responsive non-privileged materials in his possession, custody or control have been produced to defendants, and (b) as to each separate request, identifying by Bates-stamp number or other labeling device what specific produced materials correspond to the categories in each request, as contemplated by Fed. R. Civ. P. 34(b)(2)(E)(i).

The motion is granted as to Requests for Production Nos. 16 and 17.  All objections, except privilege and work product, are overruled.  These two requests seek information that is vitally relevant to full and proper evaluation by expert witnesses and by the court at trial of the value of two of the principal assets involved in the disputed substitution, the New Orleans Saints football and Pelicans basketball clubs, through comparable sales analysis.  While the time periods covered by the requests, particularly No. 16, are lengthy, sales of these kinds of assets are apparently so infrequent, and their importance to the central issue in this case so clear, that proportionality analysis weighs

heavily in favor of permitting the requests.  Benson's assertion that "some responsive documents are in the public domain and are thus equally available" to defendant, Record Doc. No. 87 at p. 8, is unpersuasive.  If Benson has non-privileged materials responsive to these requests in his possession, custody or control, as explained below, Rule 34 obligates him to produce them.

Thus, **IT IS ORDERED** that Benson must provide new written responses to Requests Nos. 16 and 17, signed pursuant to Fed. R. Civ. P. 26(g), (a) clearly stating that <u>all</u> responsive non-privileged materials in his possession, custody or control have been produced to defendants, and (b) as to each separate request, identifying by Bates-stamp number or other labeling device what specific produced materials correspond to the categories in each request, as contemplated by Fed. R. Civ. P. 34(b)(2)(E)(I).

Part of defendant's argument about Benson's response to Requests Nos. 16 and 17 to date is that some responsive materials are actually "League documents" as to which Benson "needed to get NFL and NBA approval to release them."  Record Doc. No. 70-1 at p. 11.  Benson responds that, at least as to materials responsive to Request No. 17, "the NBA would not consent to disclosure."  Record Doc. No. 87 at p. 8 n. 2.  A full understanding by the parties of Benson's discovery obligations in this regard should resolve this argument and make the new written responses ordered above dispositive.

Benson is obligated to produce <u>only</u> responsive materials that are within his "possession, custody, **<u>or</u>** <u>control</u>."  Fed. R. Civ. P. 34(a)(1) (emphasis added).  "The

concept of 'control' . . . is often highly fact-specific, [but certainly includes when] the party to whom the request is made has the legal right to obtain the document, even though in fact it has no copy." C. Wright, A. Miller, M. Kane, R. Marcus and A. Steinman, Federal Practice & Procedure, 8B Fed. Prac. & Proc. Civ. § 2210 (3d ed.) (Westlaw 2016) (hereafter "Wright & Miller") (citing U.S. Int'l Trade Comm'n v. ASAT, Inc., 411 F.3d 245 (D.C. Cir. 2005); Searock v. Stripling, 736 F.2d 650, 653 (11th Cir. 1984); Costa v. Kerzner Int'l Resorts, Inc., 277 F.R.D. 468 (S.D. Fla. 2011); Colon v. Blades, 268 F.R.D. 129 (D.P.R. 2010); In re NTL, Inc. Secs. Litig., 244 F.R.D. 179 (S.D.N.Y. 2007); Mt. Hawley Ins. Co. v. Felman Prod., Inc., 269 F.R.D. 609 (S.D. W. Va. 2010)) (emphasis added). Factors to consider in determining whether a party has "control" of materials include "whether the litigant . . . could secure materials from [a] nonparty corporation to meet its own business needs, and whether, by virtue of stock ownership or otherwise, one . . . effectively controls the other." Id. at p. 1. "[U]nder some circumstances courts interpret the control concept to go beyond whether the litigant has a legal right to obtain materials and focus on practical ability to obtain them." Id. at p. 2 (emphasis added).

Thus, if Benson or any of the entities he controls has actual possession or custody of responsive materials, the absence of League consent does not trump Rule 34(a)(1), and Benson must produce them, even without League consent. Similarly, if Benson has the legal right or practical ability to obtain "League documents" responsive to these requests

that are not in the actual possession or custody of Benson or the entities that he controls, they are within his control, and he must produce them. If not, he is under no obligation to do so.

Benson's new written responses to Requests Nos. 16 and 17 must consider and reflect both this concept of "control" and whether he or any of the entities he controls has possession or custody of responsive materials. At this time, no evidence on this point has been presented to the court. It may be that the deposition testimony of one or more persons whose names already appear on the parties' lists of deponents, Record Doc. Nos. 85 at p. 2, 86-2, will shed light on whether plaintiff's discovery obligations have appropriately been met.

The motion is denied, at least at this time, subject to the order contained herein, as to Requests for Production Nos. 20-25, which appear to be part of defendant's request for an order compelling production of documents allegedly improperly withheld on privilege grounds. Requests Nos. 20 and 21 seek correspondence between Benson or employees of some of his companies and Benson's trust and estate lawyers. Benson objects to production of all materials responsive to these requests on privilege and/or work product grounds. Requests Nos. 22 and 23 seek correspondence between Empire Valuation Consultants, an expert for Benson in this case, and Benson's trusts and estates lawyers. Benson objects to production of some responsive materials on various grounds, but has produced "facts, data and information provided to Empire by [the trust and estate

lawyers] in connection with Empire's valuations" for purposes of expert testimony in this case. Record Doc. No. 70-3 at pp. 17-18. <u>See</u> Fed. R. Civ. P. 26(b)(<u>4</u>)(C)(ii). Requests Nos. 24 and 25 seek correspondence regarding the subject assets exchange to or from Dennis Lauscha, president of the Saints and Pelicans sports franchises, and Joseph V. Feuge, Benson's certified public accountant. Again, Benson objects to the production of some responsive materials, but not others. On their face, Requests Nos. 20 through 25 certainly appear to seek at least some materials presumptively protected by the attorney-client privilege and/or work product doctrines. Requests Nos. 24 and 25 are objectionably broad and unclear, especially as to whether they seek protected materials, because they are all-encompassing and do not identify and are not limited by any reference to any person or entity with whom either Lauscha or Feuge might be corresponding.

I note as a threshold matter that defendant's suggestion that many of the privilege and work product objections are suspect because they involve people like Lauscha and Ed Lang, who are respectively the president and chief financial officer of the Benson-owned Saints and Pelicans, and Feuge, Benson's CPA, is an overly restrictive reading of two of the three protective concepts at issue in this motion, specifically, the attorney-client privilege and Rule 26(b)(3) work product. However, it is <u>not</u> an overly restrictive reading of the third applicable kind of protection that is created under Fed. R. Civ. P. 26(b)(<u>4</u>), which protects only certain kinds of communications, and then only those

between an expert witness, like Kevin Kane of Empire Valuation, and the party's
<u>attorneys</u> <u>only</u>.  Plaintiff's highly suspect redaction of defendant's Exhibit 23 is the
clearest example of apparent error by plaintiff in his assertion of Rule 26(b)(<u>4</u>)
protection.

Under both Louisiana law and federal common law, which are materially similar,
the attorney-client privilege protects confidential communications between the client <u>or</u>
<u>a representative of the client</u> and the client's lawyer or a representative of the lawyer;
between the lawyer and a representative of the lawyer; by the client or his lawyer, <u>or a</u>
<u>representative of either,</u> to a lawyer, or representative of a lawyer, who represents another
party concerning a matter of common interest; <u>or between representatives of the client</u>
or <u>between the client and a representative of the client</u>.  La. Code Evid. art. 506(B).[2]  A
"representative of the client" is defined as:

> (a) A person having authority to obtain professional legal services, or to act
> on advice so obtained, on behalf of the client.
> (b) Any other person who makes or receives a confidential communication
> for the purpose of effectuating legal representation for the client, while
> acting in the scope of employment for the client.

<u>Id.</u> art. 506(A)(2).

When a communication between attorney and client occurs in the presence of a
third party who is <u>not</u> the attorney's client, the communication generally is <u>not</u>

---

[2]Article 506 was adopted, with minor revisions, from proposed Federal Rule of Evidence 503.
24 Wright & Miller § 5471, at 15-17 n.49 (Supp. 2012).

confidential and the privilege is waived.  Nguyen v. Excel Corp., 197 F.3d 200, 207 (5th Cir. 1999); Hodges, Grant & Kaufman v. United States, 768 F.2d 719, 721 (5th Cir. 1985).  However, the privileged nature of the communication depends on whether the third parties were "representatives" of the client "who [made] or receive[d] a confidential communication for the purpose of effectuating legal representation for the client, while acting in the scope of employment for the client," in which case no waiver of the privilege occurs. La. Code Evid. art. 506(A)(2) (emphasis added); see also In re Liprie, No. 10-21281, 2012 WL 4499062, at *2 (Bankr. W.D. La. Sept. 28, 2012) (citing In re Bieter Co., 16 F.3d 929, 936 (8th Cir. 1994); 24 Wright & Miller §§ 5482, 5483 (1986)) (critical question under federal common law is whether "the presence of those representatives furthers the provision of legal services to the client").

When agents or employees (like Lauscha and Feuge, perhaps) participate as members of a team to provide information and documents to litigation counsel and to obtain from counsel answers to the client's questions, with the primary purpose of effectuating counsel's rendition of legal advice to the client, communications between the client's legal personnel and the third-party agents are privileged, and the privilege is not waived by the communications.  In re Bieter, 16 F.3d at 938; In re Liprie, 2012 WL 4499062, at *4; Rodriguez v. CHRISTUS Spohn Health Sys., No. C-09-95, 2011 WL 3652189, at *7 (S.D. Tex. Aug. 18, 2011); In re Vioxx Litig., 501 F. Supp. 2d 789, 811 (E.D. La. 2007); Sky Techs. LLC v. IBM, Inc., No. 2:03-CV-454, 2006 U.S. Dist. LEXIS

100667, at *11-14 (E.D. Tex. Feb. 13, 2006); <u>In re Grand Jury Subpoenas</u>, 265 F. Supp. 2d 321, 323, 329, 331 (S.D.N.Y. 2003); <u>In re Copper Mkt. Antitrust Litig.</u>, 200 F.R.D. 213, 218-19 (S.D.N.Y. 2001); Paul R. Rice, <u>Attorney-Client Privilege in the United States</u> § 4:19 at pp. 4-68 to 4-71, 4-74 (1993).

Similarly, the work product doctrine, as embodied in Fed. R. Civ. P. 26(b)(<u>**3**</u>)(A), extends not just to materials prepared in anticipation of litigation or for trial by the party or his lawyer, but also to that which was prepared in anticipation of litigation or for trial "by or for another party <u>or its representative</u> (including the other party's . . . agent)."

However, Rule 26(b)(<u>**4**</u>)(C), which provides "Trial-Preparation Protection for Communications Between a Party's Attorney and Expert Witnesses," is different and more narrowly constructed with respect to representatives or agents of the client than Rule 26(b)(<u>**3**</u>) or the attorney-client privilege.  On its face, Rule 26(b)(<u>**4**</u>)(C) protects as work product "communications between the party's <u>attorney</u> and any [testifying expert] witness," unless the communications fall within one of three listed exceptions. Fed. R. Civ. P. 26(b)(4)(C) (emphasis added).  "Although the Fifth Circuit has not yet addressed the interplay of these provisions as applied to whether communications between a party's testifying expert and non-attorney representative are discoverable," all of the circuit courts and several district courts that have addressed this issue have held that communications between testifying experts and <u>non-attorneys</u>, even if they are representatives of the resisting party, are discoverable.  <u>Whole Women's Health v.</u>

Lakey, 301 F.R.D. 266, 269 -71 (W.D. Tex. 2014) (citing Republic of Ecuador v. Mackay, 742 F.3d 860 (9th Cir. 2014); Republic of Ecuador v. Hinchee, 741 F.3d 1185 (11th Cir. 2013); Republic of Ecuador v. Bjorkman, 735 F.3d 1179 (10th Cir. 2013)); accord In re Application of Republic of Ecuador v. Douglas, No. 11-MC-91287-DPW, 2015 WL 9272853, at *4-6 (D. Mass. Dec. 18, 2015); United States v. Veolia Env't N. Am. Operations, Inc., No. 13-MC-03-LPS, 2014 WL 5511398, at *6 (D. Del. Oct. 31, 2014); Fialkowski v. Perry, No. 11-5139, 2012 WL 2527020, at *4-5 (E.D. Pa. June 29, 2012).

On one hand, Benson's description of the withheld materials and the identities of the persons involved, including three of Benson's lawyers, the president and chief financial officer of the two sports franchises that plaintiff owns, and his certified public accountant, give rise to a strong presumption that much of the requested correspondence may be protected, either by the attorney-client privilege or Rule 26(b)(**3**). It seems unlikely, as defendants nevertheless seem to intimate, that these individuals are not Benson's representatives or agents for purposes of both the attorney-client privilege and the work product doctrine. Little in defendant's assertions in these motion papers seriously undermines the appearance that the requested correspondence is either privileged or Rule 26(b)(3) work product. On the other hand, the extreme breadth of the language of Requests Nos. 24 and 25 indicates that there may be some subset of what may be a vast universe of requested correspondence that involved non-lawyers or non-

legal team members or that were prepared or submitted for non-litigation purposes.  In addition, communications between a testifying expert and a <u>non</u>-attorney are <u>not</u> protected from discovery by Rule 26(b)(4), and must be produced, or at least logged.

The court has been presented at this time with little more than the assertions of lawyers.  Lawyers' arguments are not evidence.  No <u>evidence</u> has been presented as to all of the essential elements either of the attorney-client privilege (including, for example, the purpose of particular correspondence, whether the communications were confidential, whether the participants were members of a team of representatives authorized to provide information to counsel, or whether anyone outside of the relationship may have been sent a copy) or the work product doctrine (for example, the primary motivating factor behind creation of the correspondence – whether it was for trial preparation as opposed to ordinary business or other reasons).

In short, the court cannot definitively resolve the parties' dispute as to whether particular materials are in fact protected from discovery by either the attorney-client privilege or the work product doctrine.  A costly and time-consuming evidentiary hearing or at least the written submission to the court of evidence in the form of affidavits or transcripts of deposition testimony as attachments to appropriate motions may be necessary to determine these questions conclusively.  In connection with such a determination, Benson, as the party resisting discovery by asserting any privilege, including work product protection, will bear the burden of <u>proof</u> sufficient to substantiate

his privilege claims and cannot rely merely on a blanket assertion of privilege.  United States v. Newell, 315 F.3d 510, 525 (5th Cir. 2002); In re Santa Fe Int'l Corp., 272 F.3d 705, 710 (5th Cir. 2001); Ingraham v. Planet Beach Franchising Corp., No. 07-3555, 2009 WL 1076717, at *1 (E.D. La. Apr. 17, 2009) (citing Hodges, 768 F.2d at 721); Kiln Underwriting Ltd. v. Jesuit High Sch., No. 06-04350, 2008 WL 108787, at *4-5 (E.D. La. Jan. 9, 2008) (citing Hodges, 768 F.2d at 721); United States v. Impastato, No. 05-325, 2007 WL 2463310, at *2 (E.D. La. Aug. 28, 2007) (citing United States v. Harrelson, 754 F.2d 1153, 1167 (5th Cir. 1985); United States v. Kelly, 569 F.2d 928, 938 (5th Cir. 1978)); High Tech Comm'c'ns, Inc. v. Panasonic Co., No. 94-1477, 1995 WL 45847, at *1 (E.D. La. Feb. 2, 1995) (citing Hodges, 768 F.2d at 721).

Before embarking on the kind of extensive proceedings necessary for a definitive determination of these important objections, the court hereby requires that three steps must be taken.  First, Benson must provide defendants with new written responses to Requests Nos. 22, 23, 24 and 25,[3] signed pursuant to Fed. R. Civ. P. 26(g), (a) clearly stating that all responsive non-privileged materials in his possession, custody or control have been produced to defendants, and (b) as to each separate request, identifying by Bates-stamp number or other labeling device what specific produced materials

---

[3]No further written responses to Requests for Production Nos. 20 and 21 are required because the requests, on their face, appear to request protected materials, and Benson has objected to production of any responsive materials.

correspond to the categories in each request, as contemplated by Fed. R. Civ. P. 34(b)(2)(E)(i).

Second, the parties must proceed with their planned deposition discovery. Several of the persons involved in the disputed correspondence are included in the parties' lists of persons to be deposed. Certainly, they may be examined during their testimony, not about the specific content of allegedly protected materials, but about the facts that are determinative of the application of the asserted protective doctrines, together with information about what responsive materials may exist that have not yet been produced. Denial of this portion of defendant's motion is without prejudice to the filing of a new motion as to particularly identified, withheld materials, if warranted by evidence obtained during the depositions.

Third, the motion is granted in part as to defendant's request for in camera review, at least of some of plaintiff's withheld documents. Counsel for both sides must confer in good faith, and defense counsel must specifically identify via letter to me and plaintiff's counsel, **no later than Friday, March 18, 2016**, the specific materials listed in plaintiff's supplemental privilege log that defendants want the court to review in camera. As discussed below, the existing supplemental privilege log appears deficient because it does not identify some unknown persons listed as authors or recipients of communications, see, e.g., defendant's reply memorandum, Record Doc. No. 96 at p. 10 n.7, and because it may not include items that should be included, in light of the arbitrary

-18-

time period restrictions placed on the log by plaintiff.  My initial review of the existing

log identifies certain documents that, on their face, appear to be protected by the work

product doctrine or attorney-client privilege – for example, correspondence from

Lauscha, who appears to have been plaintiff's representative for purposes of this lawsuit,

to Benson's litigation counsel.  Other listed documents are suspect – for example, Item

No. 204, an email from plaintiff's expert Kevin Kane to Patrice Gunter, whom

defendants identify in their reply memorandum as the Saints' Controller; No. 359, an

email from Mary Polensky, the former bookkeeper for Renee Benson's company, to

Vicky Neumeyer, in-house counsel for the Saints; and No. 362, an email from Lauscha's

secretary Jeanne Brown to Greg Bensel, Vice President of Communications; and any

similar materials that defendants might identify.  I will review defendant's letter and

advise the parties which documents I will consider in camera.  It may be that additional

materials might be identified for in camera review after defense counsel obtains the

supplemental privilege log ordered below.

The motion is denied as to Request for Production No. 33.  All objections are

sustained.  No further response or production as to this request is required.  The

tangentially relevant, if any, information that defendant appears to seek can be obtained

from more convenient, less burdensome sources, Fed. R. Civ. P. 26(b)(2)(C)(i);

specifically, the deposition testimony of Kane and Paul Cordes, as plaintiff proposes in

his opposition memorandum.  Record Doc. No. 87 at p. 11.

The motion is granted in part and denied in part as to Request for Production No. 38, which seeks financial statements and balance sheets for the broad panoply of "Benson Companies," including those <u>not</u> involved in the proposed asset exchange. This request is overly broad and not appropriately proportional to the needs of the case. Therefore, the motion is denied insofar as it seeks responsive materials as to <u>all</u> of these entities. The motion is granted in part in that Benson must (a) provide a new written response clearly stating, without objection and signed pursuant to Fed. R. Civ. P. 26(g), that <u>all</u> non-privileged responsive materials concerning all entities identified in the proposed exchange of assets have been produced, and (b) supplement his response and production, as required by Fed. R. Civ. P. 26(e), by producing to defendants any updated financial statements for the entities identified in the proposed assets substitution <u>immediately</u> upon their completion, if such completion occurs before the trial date in this case.

In their reply memorandum, defendants argue that Benson and his Entities should be compelled specifically to produce:

• NBA and NFL league memoranda regarding the sales of interests in other sports franchises. See Rec. Doc. 70-2, at Reqs. 16 and 17.
• Financial data for 2015 and 2016 for each of the Benson Companies2, including monthly financial statements, income statements, and balance sheets. See Rec. Doc. 70-2, at Req. 38.
• Information regarding Benson's marital deduction trust and how his assets will be treated upon his death. See Rec. Doc. 70-2, at Req. 33.

• Documents reflecting Louisiana Media's plans to participate in the upcoming Federal Communications Commission ("FCC") incentive auction. See Rec. Doc. 70-15, at Reqs. 20 and 21.
• Documents reflecting the Saints' club business, which defendants argue are responsive to Requests Nos. 18 and 27.

Record Doc. No. 96 at p. 2. As to the first point (NBA and NFL league memoranda) as already explained above, Benson must respond to Requests for Production Nos. 16 and 17 and produce all non-privileged responsive materials to the full extent that he has these materials within his possession, custody or control. I reject the latter four points because they exceed the scope of discovery in that they are irrelevant and/or not proportionally appropriate to the needs of this case. In addition, no relief of any kind was requested in defendant's motion concerning his Requests Nos. 18 and 27. I will not permit defendant to sneak this request for relief into these proceedings by bringing it improperly in a reply memorandum, when no such relief was requested in the motion itself.

(2)     Subpoenas Duces Tecum

The motion is denied insofar as it seeks an order compelling responses of any kind to the two subpoenas. Both subpoenas are objectionable under Fed. R. Civ. P. 26(b)(1) and (2)(C)(i) because they exceed the scope of permissible discovery. Subpoenas duces tecum "'are discovery devices which, although governed in the first instance by Rule 45, are also subject to the parameters established by Rule 26.'" Garvin v. S. States Ins. Exchg. Co., No. 1:04cv73, 2007 WL 2463282, at *5 n.3 (N.D. W. Va. Aug. 28, 2007) (quoting In re Application of Time, Inc., 1999 WL 804090, at *7 (E.D. La. Oct. 6, 1999),

aff'd, 209 F.3d 719, 2000 WL 283199 (5th Cir. 2000)); accord Martin v. Oakland Cnty., No. 2:06-CV-12602, 2008 WL 4647863, at *1 (E.D. Mich. Oct. 21, 2008) (citing Fabery v. Mid-South OB-GYN, No. 06-2136, 2008 U.S. Dist. LEXIS 39679, at *3-5 (W.D. Tenn. May 15, 2008), and cases cited therein). One of those parameters is the prohibition of unreasonably cumulative and duplicative discovery. Another is the requirement of proportionality discussed above.

In this case, the requests for production contained in the two subpoenas are unreasonably cumulative and duplicative of the requests for production served upon Benson individually. Benson or his interests own both companies that received the subpoenas. As discussed above, Benson's obligation to respond to requests submitted to him personally includes responsive materials over which he has "control," including the legal right to obtain the document from a nonparty corporation to meet his own business needs or by virtue of stock ownership or the practical ability to obtain the documents. Under these standards, Benson has "control" for Rule 34 purposes over responsive materials in the actual custody of these two companies and is therefore obligated to produce materials in their possession in response to the production requests sent to him individually. That "control" renders these subpoenas unreasonably cumulative and duplicative. For reasons similar to those addressed in the proportionality discussion above, the broad expansion of discovery in this case, including the burden and

expense, represented by these subpoenas places them squarely beyond the applicable proportionality limits.

Both subpoenas are QUASHED.  No further responses to them are required.

(3)   Privilege Logs

As discussed above, the motion is denied at this time insofar as it seeks an order compelling Benson to produce any documents withheld from production on attorney-client privilege or work product grounds because the current record provides no basis for reaching such a result concerning important and facially valid objections of this type. However, to facilitate any further resolution of this dispute that may become necessary, the motion is granted in part and denied in part insofar as it seeks an order requiring Benson to provide a more complete privilege log.

Fed. R. Civ. P. 26(b)(5)(A) requires production of a log "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial preparation material." Fed. R. Civ. P. 26(b)(5)(A).  A proper privilege log must "describe the nature of the documents, communications, or tangible things not produced or disclosed–and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Id.  "The purpose of the privilege log is to provide the parties and the court adequate information to determine whether a document is privileged. . . .  Typically, a privilege log must identify each document and provide basic information, including the author,

-23-

recipient, date and general nature of the document." In re Papst Licensing, GmbH Patent Litig., No. Civ. A. MDL 1298, 2001 WL 1135268, at *2 (E.D. La. Sept. 19, 2001) (quotation omitted) (citing Sec. & Exch. Comm'n v. Thrasher, No. 92 CIV 6987, 1996 WL 125661, at *1 (S.D.N.Y. Mar. 20, 1996) (citing United States v. Constr. Prods. Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996))) (emphasis added); see also Botell v. United States, No. S-11-1545, 2012 WL 4208173, at *2 (E.D. Cal. Sept. 19, 2012) (citation omitted) (A proper privilege log contains the "general nature of the document, the identity and position of its author, the date of authorship, identity and position of recipients, location of the document, and reason document was withheld."); Cashman Equip. Corp. v. Rozel Operating Co., No. 08-363-C-M2, 2009 WL 2487984, at *2 (M.D. La. Aug. 11, 2009) (quotation and citations omitted) (A privilege log "should not only identify the date, the author, and all recipients of each document listed therein, but should also describe the document's subject matter, purpose for its production, and specific explanation of why the document is privileged or immune from discovery.").

In this case, Benson has refused to list on his privilege log any document prepared on or after December 5, 2014, the date on which he claims litigation was reasonably anticipated and/or trial preparation began.  This lawsuit was filed on March 11, 2015. On one hand, I agree with plaintiff's counsel that "it would be burdensome and wasteful . . . to log every work product communication that his attorneys, representatives and experts have had since the lawsuit was filed."  Record Doc. No. 87 at p. 18.  Hundreds

of such letters, emails and memoranda would obviously and undoubtedly be protected from discovery.

On the other hand, drawing a line at December 5, 2014, is arbitrary and not determinative alone of the question of whether a particular item is protected. The parties dispute when litigation could reasonably have been anticipated. Only the court can determine that date, and then only on a full record of evidence. Timing is merely one evidentiary factor, and sometimes not the most important one, in such a determination. It is entirely conceivable that correspondence or other items responsive to defendant's requests that are only arguably privileged or work product could have been generated or sent <u>after</u> the lawsuit was filed. In discussing his privilege log demarcation line and post-filing communications, Benson concedes, for example, that his "attorneys [and presumably others of his representatives] would have communicated with Empire about the value of the trust assets <u>even if litigation</u> were not . . . pending." Record Doc. No. 87 at p. 18. As a further example, it is also conceivable that some memo between Lauscha or Feuge and some other Saints or Pelicans employee or even a lawyer concerning valuation of the Saints or Pelicans might have been generated <u>after</u> December 5, 2014, in response to a request from or a requirement of the NFL, the NBA, the IRS, a bank, Forbes magazine or who knows what. That kind of correspondence might be for some purpose other than anticipated litigation, trial preparation or the giving or receipt of legal

advice and should be produced or, if Benson argues that the correspondence is protected from discovery, should at least be logged.

The court has discretion to limit the burden of preparing a Rule 26(b)(5) privilege log when the typically detailed requirements of a log would be unduly burdensome and certain documents are obviously protected by the attorney-client privilege or work product doctrine. Federal district courts "'retain some discretion to permit less detailed disclosure in appropriate cases.'" Mfrs. Collection Co. v. Precision Airmotive, LLC, No. 3:12-CV-853-L, 2014 WL 2558888, at *3 (N.D. Tex. June 6, 2014) (quoting Thrasher, 1996 WL 125661, at *1; see id. at *4 (allowing a categorical privilege log) (citing Games2U, Inc. v. Game Truck Licensing, LLC, No. MC-13-00053-PHX-GMS, 2013 WL 4046655, at *7 (D. Ariz. Aug. 9, 2013); United States v. Gericare Med. Supply Inc., No. 99-0366-CB-L, 2000 WL 33156442, at *4 (S.D. Ala. Dec. 11, 2000); In re Imperial Corp. of Am. Related Litig., 174 F.R.D. 475, 478 (S.D. Cal. 1997)); Fed. R. Civ. P. 26(b)(5), advisory committee notes to 1993 amendment, West pamph. at p. 162 (rev. ed. 2015) ("Details concerning time, persons, general subject matter, etc., may be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories.").

Appropriate circumstances for exercising the court's discretion include "if (a) a document-by-document listing would be unduly burdensome and (b) the additional

information to be gleaned from a more detailed log would be of no material benefit to the discovering party in assessing whether the privilege claim is well grounded." Mfrs. Collection Co., 2014 WL 2558888, at *3 (quotation omitted). For example, courts have allowed a privilege log to employ a categorical approach when the discovery request on its face seeks "wholesale production of documents" that are "ordinarily covered by" work-product protection and/or the attorney-client privilege, id. (quotation omitted); the responsive materials are extremely voluminous; and the responding party "plausibly asserts that a document-by-document listing would be a long and fairly expensive project." Id. (quotation omitted); see also Am. Broad. Cos. v. Aereo, Inc., No. 12 CIV. 1540, 2013 WL 139560, at *2 (S.D.N.Y. Jan. 11, 2013) (Requiring plaintiffs to review every relevant document held by outside counsel "would be immensely burdensome, as it would likely require review of substantial portions of the litigation files and internal law firm e-mails of numerous cases. Particularly in light of the strong likelihood that such documents are, in fact, subject to legitimate claims of privilege, requiring Plaintiffs to undertake such an endeavor without further limitations is unduly burdensome.").

A detailed privilege log may be of no material benefit to the discovering party when prior privilege logs, affidavits or other information before the court reveal "little, if any, reason to believe that very many of [the withheld] documents would be other than protected by the attorney-client privilege or work product. And it appears that any challenge [the discovering party] may have will generally be to entire categories of

documents." <u>Mfrs. Collection Co.</u>, 2014 WL 2558888, at *4 (quotation omitted).  "Other

courts have permitted a categorical privilege log where, for example, defendants have not

explained how a categorical privilege log impaired their ability to test the plaintiff's

claim of work product protection, which rises or falls as a unit."  <u>Id.</u> (quotation omitted).

Various options that, separately or in combination, could mitigate the burden of

preparing a privilege log in appropriate circumstances include:

> (1) the submission of "categorical" privilege logs . . . , <u>see, e.g.</u>, <u>GenOn</u>
> <u>Mid-Atlantic</u>, 2011 U.S. Dist. LEXIS 133724, at *33-35, 2011 WL
> 5439046 (S.D.N.Y. Nov. 10, 2011), possibly to be followed by more
> particular itemization of documents in a subset of those categories;
> (2) exclusion from the privilege logs of documents created after the
> commencement of litigation relating to the [subject] at issue, <u>see, e.g.</u>,
> <u>United States v. Bouchard Transp.</u>, 2010 U.S. Dist. LEXIS 37438, at *4
> (E.D.N.Y. Apr. 14, 2010); <u>Ryan Inv. Corp. v. Pedregal De Cabo San Lucas</u>,
> 2009 U.S. Dist. LEXIS 118337, at *9, 2009 WL 5114077 (N .D. Cal. Dec.
> 18, 2009); (3) excluding from the privilege log purely internal
> communications among counsel and their agents; and (4) limiting the
> request to a subset of specific and identified [issues] established through a
> meet-and-confer process.

<u>Am. Broad. Cos.</u>, 2013 WL 139560, at *2.

Accordingly, **IT IS ORDERED** that Benson and his counsel must provide

defendants with a supplemental privilege log identifying materials generated or prepared

at any time <u>after</u> December 5, 2014, that are being withheld from production on privilege

or work product grounds of the sort mentioned in the examples provided above, at oral

argument and in similar circumstances.  Benson and his counsel are excused, however,

from including on their supplemental log any correspondence, memoranda or other

written or electronically generated materials prepared by, sent directly by and/or submitted directly to (but not merely "cc'd" or "bcc'd") on or after March 11, 2015, the date this lawsuit was filed, Benson's counsel of record in this case (Stone Pigman firm lawyers) and any agents or employees of that law firm concerning this lawsuit or in preparation for this trial.

*   *   *

Plaintiff must provide to defendants all additional written responses to requests for production and privilege log, together with actual production of all non-privileged materials responsive to the requests and this order, no later than **March 30, 2016**.

(B)     MOTIONS FOR A DEPOSITION SEQUENCING ORDER

In the two separate motions seeking a discovery sequencing order, the parties dispute the timing of Benson's individual deposition.  Specifically, defendants request an order requiring that Benson's deposition be conducted early in the deposition schedule, as ordinarily occurs in cases brought by an individual plaintiff, while Benson argues that he should be deposed last among the various fact witnesses.  He asserts that the so-called "apex doctrine" should apply because of "the complexity of Mr. Benson's business operations and estate planning" and because the "persons with 'superior and unique' knowledge" about the key issue of the value of the assets proposed to be transferred in and out of the trusts, "aside from the expert witnesses, will be the executives and attorneys directly involved in the valuation process."  Record Doc.

No. 85-1 at pp. 5-7.  Those persons include Lauscha, president of the Saints and Pelicans sports franchises; Lang, the franchises' senior vice-president and chief financial officer; and Paul Cordes and Jean Niederberger, Benson's trusts and estate lawyers.

The court unquestionably has authority to impose a discovery sequencing order and otherwise control and manage discovery.  Fed. R. Civ. P. 26(d)(3) provides: "Unless the parties stipulate or the court orders otherwise for the parties' and witnesses' convenience and in the interests of justice:  (A) methods of discovery may be used in any sequence; and (B) discovery by one party does not require any other party to delay its discovery."  See also Fed. R. Civ. P. 16(c)(2) ("the court may . . . take appropriate action on . . . (F) controlling and scheduling discovery, including orders affecting . . . discovery under Rule 26 and Rules 29 through 37").

I find that the "apex doctrine," a purely discretionary discovery management tool ordinarily applied when a corporation or other business entity is the litigant, should not be applied in these circumstances.  Benson himself, not any or all of his companies, is the named individual plaintiff in this case. He personally initiated this lawsuit by filing it.  He personally is the grantor of the subject trusts.  He is the key actor in and proponent of the transactions that make up the basis of this lawsuit.  He – not some entity –  is the person who selected the assets to include originally in the trusts and who made the decision to propose the substitution of assets that is the heart of this dispute, apparently for very personal reasons.  Record Doc. No. 87-3.  As the individual plaintiff, his case-in-

chief will proceed first at trial, and he bears the burden of proof.  In the vast majority of cases to which I have been assigned in my 21 years as a magistrate judge of this court, the plaintiff who has laid out the claims and thereby initially set the parameters of the suit has been the first to be deposed.

Benson has been characterized by his own lawyers in the motion papers currently before me as the person who "presides over a veritable business empire."  Record Doc. No. 87 at p. 22 (emphasis added).  A person who presides is quite different from a person who merely stands by and observes.  This characterization cuts two ways.  On one hand, it should reasonably be expected that such a person would have firsthand, primary knowledge of his own affairs, including the substance and meat of his assets and this lawsuit.  Benson has made his personal worth and creditworthiness a key issue in this case by proposing his own individual promissory notes as significant assets in the proposed transfer of trust assets.  Record Doc. No. 1 (Complaint at p. 13, ¶ 47(c) and (d); pp. 17-18 ¶ 64(e)).

On the other hand, such a person might also reasonably be expected to have delegated more intimate knowledge of the details of his vast holdings and broad-ranging business and financial affairs to trusted others in his employ and records maintained by them, while maintaining general, big picture ownership and oversight.  In my view, this latter aspect is all the more reason why Benson should be deposed first, not last.  As to questions about details for which he may have delegated responsibility to others, he may

truthfully and acceptably answer, "I'm not familiar with that document" or "I don't know the details," and then identify individuals in his employ or organizations who <u>do</u> possess such particular knowledge, so that defendants may determine whether and, if so, how to conduct deposition examination or otherwise obtain information or records from those persons. The discovery rules contemplate exactly this kind of examination and answer by a deponent by specifically recognizing that discoverable information includes "the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and locations of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1).

For the foregoing reasons, with the single exception concerning defendants' proposed third day for Benson's segmented deposition addressed below, defendants' motion for a discovery sequencing order concerning depositions is granted, and plaintiff's motion for a discovery sequencing order concerning depositions is denied. Except for the entry providing "April 15th 10:00-12:00 p.m. Hold for Continuation of Mr. Benson, if necessary," which I reject, the court adopts as its own sequencing order "Defendants' Proposed Deposition Schedule" set out at Record Doc. No. 86-2.

## (C)   PLAINTIFF'S MOTION FOR PROTECTIVE ORDER

At an early planning conference with the court concerning this case, counsel discussed concerns about the scope of Benson's discovery deposition in light of his advanced age and health. The court directed counsel to engage in a good faith discussion

in an attempt to reach agreement on the topics about which he would be examined and the time duration and other logistics of his deposition.  To their credit, counsel and the parties have largely succeeded, leaving only the questions of whether (1) a third deposition session lasting two hours, in addition to the agreed-upon two, two-and-one-half hour examination sessions, and (2) inquiry concerning five proposed topics should be permitted.

Fed. R. Civ. P. 26(c)(1) governs motions for protective orders.  The Rule provides in pertinent part:  "A party or any person from whom discovery is sought may move for a protective order . . . .  The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . specifying terms . . . for the . . . discovery."  Fed. R. Civ. P. 26(c)(1) (emphasis added).  The requirement "of a showing of good cause to support the issuance of a protective order indicates that '[t]he burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'"  In re Terra Int'l, Inc., 134 F.3d 302, 306 (5th Cir. 1998) (quoting United States v. Garrett, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)); see also United States v. Talco Contractors, Inc., 153 F.R.D. 501, 513 (W.D.N.Y. 1994) ("Good cause must be established and not merely alleged.").

As to the duration of Benson's deposition, Fed. R. Civ. P. 30(d)(1) sets the presumptive limit at "one day of 7 hours."  In this instance, however, Benson's doctor

has submitted a letter recommending that, in light of his age, 88, limited "physical stamina" and medical conditions, including "ongoing cardiac conditions that are being treated medically," the physician recommends that the deposition "be limited to a period of two and a half hours per day in the morning . . . , over a two day period."  Record Doc. No. 85-2.  I find that the doctor's advice satisfies the "good cause" standard set out above, and that Benson's deposition should be limited to no more than five hours in two separate two-and-one-half-hour sessions, in accordance with the physician's advice. Defendants will not be prejudiced by this time limit because Benson's certified public accountant and various of his other business and legal representatives, presumably with in-depth knowledge of his financial and other affairs, are also scheduled to be deposed. Thus, Benson's motion for a protective order is granted in this regard.

The motion is also granted insofar as it relates to proposed deposition topics Nos. 9 ("payment of attorney's fees and costs associated with this matter") and 10 ("any power of attorney etc.").  Plaintiff's objections to these examination topics are sustained. I find that these topics seek information that is so irrelevant and beyond what is proportionally appropriate to the needs of this case that they constitute unreasonably annoying, oppressive and unduly burdensome subjects of examination.  No questioning of Benson on these topics will be permitted.

Similarly, the motion is granted in part as to topics Nos. 7 (("[a]ny loans, distributions, or other monetary transfer to Benson by the Benson Companies") and 8

-34-

("relationship or transactions with any banking or lending institution").  As written, these topics are so overly broad that they seek some kinds of information that are irrelevant and beyond what is proportionally appropriate to the needs of this case, such that they would be unreasonably annoying, oppressive and unduly burdensome.  As explained in the opposition memorandum, however, some information constituting subsets of these topics is discoverable as to the issue of the value of the personal promissory notes Benson has proposed as part of the transfer of trust assets.  Accordingly, while wide-ranging examination on these topics as currently phrased is prohibited, defendants will be permitted to question Benson concerning (a) any outstanding loans owed by Benson personally to the Benson Companies, (b) any personal loans to Benson or personal lines of credit available to him with any bank or lending institution, and (c) whether he has provided any personal financial statements for the years 2014 and/or 2015 to any banking or lending institutions, and, if so, to what particular institutions and the identity of any person or entity in possession of such personal financial statements.

The motion is denied as to topic No. 11.  Benson may be asked about any document or discovery response provided by him in this litigation.  Again, "I don't know the details of that matter, it was handled for me by . . ." or "I'm not familiar with that document" are

acceptable answers, as long as they are true and can be followed up with a question seeking the identity of some other person more knowledgeable of the subject.

New Orleans, Louisiana, this ___16th___ day of March, 2016.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE