UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THOMAS MILTON BENSON, JR., in his capacity as GRANTOR | CIVIL ACTION NO. 2:15-cv-00782 |
| Plaintiff | JUDGE JANE TRICHE MILAZZO |
| VERSUS | |
| ROBERT A. ROSENTHAL, in his capacity as TRUSTEE | MAG. JOSEPH C. WILKINSON, JR. |
| Defendant | |

**ROSENTHAL'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION *IN LIMINE* TO EXCLUDE CUMULATIVE EXPERT TESTIMONY**

Defendant, Robert A. Rosenthal ("Rosenthal"), Trustee of the 2009 Trusts and the 2012 and 2014 GRATS respectfully submits this Memorandum in Opposition to the Motion *in Limine* to Exclude Cumulative Expert Testimony [Doc. 130] submitted by plaintiff, Thomas Milton Benson, Jr. ("Benson").

**INTRODUCTION**

Claiming that the Defendants' independent valuation experts offer "needlessly cumulative" testimony on the value of Benson Football, LLC, Benson seeks to exclude one or more of the defendants' experts from testifying. Rosenthal and Mary Rowe ("Rowe"),[1] are independent trustees with independent fiduciary duties to each beneficiary of each trust. Rosenthal and Rowe have each obtained independent valuation opinions of Benson Football,

---

[1] Rowe is the Trustee of the Trustee of the Renée Benson 2012 Irrevocable Trust, the Rita Benson LeBlanc 2012 Irrevocable Trust, and the Ryan LeBlanc 2012 Irrevocable Trust (collectively the "2012 Trusts"). Rowe has also designated Timothy Cummins as an expert. However, Benson does not argue that Mr. Cummins' opinions "overlap" with any of the other designated experts and concedes that he is the only expert to offer an opinion as to the value of Benson Basketball, LLC. *See* Doc. 130.1, p. 6.

1

LLC from experts who value NFL teams.[2]  As shown below, the defense experts' testimony is certainly not unnecessarily cumulative.

Neither Rosenthal nor Rowe's experts consulted with each other, or the Trustees, in the preparation of their reports.  While Rosenthal and Rowe's experts used similar, widely accepted valuation methodologies, they relied upon different data, applied different discounts, and arrived at different value conclusions, albeit within 10% of each other.  They also valued the Trust assets on different valuation dates.  Rosenthal's experts valued the Trust assets on June 30, 2015, as on that date the 2014 GRAT owed Benson an annuity payment.  Rowe's experts did not value the Trust assets on June 30, 2015.  Thus, while the defense expert reports on Benson Football may overlap in some respects, they are stand-alone, independent valuations that are essential to each defendant's case.

Each of the defense experts will certainly assist the Court in determining the value of the assets at issue.  While the independent defense experts analyzed the evidence from different perspectives, they arrived at similar valuations – valuations that greatly exceed Benson's gift and estate valuations.[3]  The overlapping nature of the expert testimony is minimal, and certainly will not confuse the Court or delay the trial.  Given that this is a bench trial, there is certainly no risk of prejudice to Benson.  Accordingly, Benson cannot prove that any Rule 403 factor substantially outweighs the probative value of the defense experts' testimony.

---

[2]   Unlike Rowe and Rosenthal, Mr. Benson did not retain an independent valuation expert.  Rather, he retained his long time gift and estate planning consultant, Kevin Kane, to value Benson Football as of 12/31/2014.  As will be shown at trial, Mr. Benson's counsel did not inform Mr. Kane of this litigation before he issued his March 15, 2015 valuation of Benson Football, LLC.  Mr. Kane further will admit to lowering his gift and estate planning valuations after receiving "guidance" from Saints Management.  The "flexibility" shown by Mr. Kane in his various gift and estate planning valuations seriously undermines his credibility.

[3]   Benson's gift and estate planning consultant's valuation of Benson Football, LLC is approximately 50% lower than defense experts' valuations.

2

## BACKGROUND

Rosenthal is the Trustee of the 2009 Trusts and the GRATS. Rowe is the Trustee of the 2012 Trusts.[4] Trial is set to commence before this Court, without a jury, on June 20, 2016. Doc. 42. In accordance with the Court's Scheduling Order, Rosenthal and Rowe each designated their own experts to independently perform the valuations of Benson Football, LLC. And, on or about April 15, 2016, each party provided the Court with copies of their expert reports, for an *in camera* inspection.

### I.   ROSENTHAL'S EXPERTS.

Rosenthal obtained expert opinions from Steve Shanker and Adam Jones, both of PricewaterhouseCoopers, LLP, related to the 2009 Trusts' and GRATS' ownership interests in Benson Football, LLC ("Benson Football"). Mr. Shanker is a Certified Public Accountant with extensive experience in business valuation. *See* Shanker Report, ¶¶ A(6) – (9). His opinions focus on Benson Football's 100% ownership of Louisiana Media Company, LLC ("LMC").[5] *Id.*, ¶ A(1).

Mr. Jones is a director with PwC, holding an MBA and other degrees. *See* Jones Report, ¶¶ A(6) – (9). His expertise is in the sports and entertainment sectors, including extensive experience advising NFL owners and potential purchasers regarding the values of NFL teams. *Id.* Mr. Jones' opinions focus on Benson Football's 100% ownership of the New Orleans

---

[4]   As pointed out by Benson, Rosenthal was the trustee of all of the trusts until he resigned as Trustee of the 2012 Trusts in March of 2015. Doc. 130-1, p. 2. There is no evidentiary support for Benson's suggestion that Rosenthal "manufactured the duplication of expert witnesses" through his resignation. *Id.*, p. 6. Nor is there any support for the implication that Rosenthal acted improperly by resigning and appointing Rowe as the successor trustee or that he did so in order to be able to "employ a 'tag team' of experts on a single topic." *Id.*, p. 6.

[5]   Mr. Shanker's valuation of LMC did not materially differ from Mr. Kane's valuation of LMC. *Id.*, ¶ 86.

Saints, LLC and Benz-Saints Management Company, LLC (collectively the "Saints").  *Id.*, ¶ A(1).[6]

Mr. Shanker and Mr. Jones also authored a joint report, combining their two separate opinions, to give an opinion on the aggregate value of Benson Football and the value of minority interests in Benson Football.  *See* Shanker/Jones Report.  Rosenthal's experts valued Benson Football on three relevant dates for the 2009 Trusts and 2014 GRAT:  December 31, 2014 (the date Mr. Benson claims the Notice of Exchange was effective), June 30, 2015 (the date that the 2014 GRAT owed Mr. Benson an annuity payment), and December 31, 2015 (the date that the Court asked the parties to value the Trust assets).  *Id.*, ¶ D(29).

## II. ROWE'S EXPERT.

Rowe obtained an expert opinion from Jeffrey Phillips of Stout Risius Ross regarding the fair market value of one class B unit share of Benson Football as of only December 31, 2014 and December 31, 2015.  *See* SRR Reports.[7]  Since the 2012 Trusts do not owe Mr. Benson an annuity payment on June 30, 2015, Mr. Phillips did not value Benson Football or a class B unit share as of June 30, 2015.

## III. THE EXPERTS' DIFFERENT ANALYSIS AND CONCLUSIONS.

Rosenthal's experts' opinions on value differ from Rowe's experts in several ways.  For instance, while they both used a guideline transaction method to value the Saints, they analyzed different NFL transactions, used different revenues, and applied different revenue multiples and minority discounts.  In fact, they disagreed completely on the applicability of lack

---

[6] Mr. Jones' valuation of the New Orleans Saints is vastly greater than Mr. Kane's valuation.

[7] Mr. Phillips also provided an opinion as to the fair market value of the proposed promissory notes offered by Benson as part of the exchange.  Benson has not argued that any part of this opinion is cumulative, and PWC did not value the promissory notes at issue.

4

of control and non-voting rights discounts to value the minority interests in Benson Football.  As a result, their valuation opinions, while within 10% of each other, differ on the aggregate value of Benson Football, as well as the value of the Trusts' minority interests in Benson Football.  Both defense experts, however, are in agreement that Mr. Benson's gift and estate planning valuations grossly undervalued the Trusts' assets.

## LAW AND ARGUMENT

I. **EXCLUSION OF EVIDENCE AS CUMULATIVE, GENERALLY.**

Generally, expert testimony which is relevant, reliable, and helpful is admissible under Federal Rule of Evidence 702.  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591, 113 S.Ct. 2786, 2796, 125 L.Ed.2d 469 (1993) (discussing admissibility under Rule 702). Benson makes no challenge in his Motion to defendants' experts' testimony under Rule 702. Rather, Benson seeks exclusion of defendants' experts' testimony on the sole basis that the testimony is allegedly "needlessly cumulative" under Federal Rule of Evidence 403.

Benson cannot demonstrate that exclusion is appropriate under Rule 403, Rule 403 provides:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 403.  "However, because Rule 403 permits the exclusion of probative evidence, it is an extraordinary remedy that must be used sparingly." *Coates v. A C & S, Inc.*, CIV. A. 90-1448, 1994 WL 34048, at *2 (E.D. La. Jan. 26, 1994) (quoting *Dartez v. Fibreboard Corp.,* 765 F.2d 456, 461 (5th Cir.1985)).

> Evidence is 'cumulative' when it adds very little to the probative force of the other evidence in the case, so that if it were admitted

> its contribution to the determination of truth would be outweighed by its contribution to the length of trial, with all the potential for confusion, as well as prejudice to other litigants, who must wait longer for their trial, that a long trial creates.

*United States v. Kizeart*, 102 F.3d 320, 325 (7th Cir.1996) (quoting *United States v. Williams,* 81 F.3d 1434, 1443 (7th Cir.1996)) (emphasis added).

Under Rule 403, whether evidence "is needlessly cumulative to the extent that its probative value is outweighed is a determination which lies within the sound discretion of the trial court and that discretion is generally viewed as very broad."  *United States v. Davis*, 639 F.2d 239, 244 (5th Cir.1981).  However, the trial court's discretion is not unlimited.  "[T]he 'substantially outweighed' requirement is designed to further a policy favoring the admissibility of evidence" and the district court lacks discretion to exclude evidence where its probative value is <u>not</u> "substantially outweighed" by a Rule 403 factor.  *Id.* (emphasis added).

> The phrasing of Rule 403 makes it clear that the discretion to exclude does not arise when the balance between the probative worth and the countervailing factors is debatable; there must be a significant tipping of the scales against the evidentiary worth of the proffered evidence. …

*Id.* (quoting 22 C. Wright & K. Graham, Federal Practice and Procedure: Evidence § 5221, at 309-10 (footnotes omitted)) (emphasis added); *see also United States v. Brown*, 441 F.3d 1330, 1362 (11th Cir.2006) ("In reviewing issues under Rule 403, we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact") (emphasis added).  Where evidence has "an independent evidentiary value" it is not cumulative but "contribut[ory] to the determination of the truth." *Kizeart*, 102 F.3d at 325 (quoting *Williams*, 81 F.3d at 1443).

## II. MOTIONS IN LIMINE ARE DISFAVORED IN JUDGE TRIED CASES.

"[T]he purpose of a motion in limine is to prevent the jury from hearing inadmissible and/or unduly prejudicial evidence." *United States v. Impastato*, CRIM A 05-325, 2007 WL 2463310, at *10 (E.D. La. Aug. 28, 2007) (emphasis added). The burden is on the movant "to show reason why the evidence should be excluded." *F.D.I.C. v. Wheat*, 970 F.2d 124, 131 (5th Cir.1992). Such motions typically serve little purpose in a bench trial because "the Court can and does readily exclude from its consideration inappropriate evidence of whatever ilk." *Cramer v. Sabine Transp. ¥Co.*, 141 F.Supp.2d 727, 733 (S.D. Tex.2001).

Further, where the matter is tried by a judge any "prejudicial impact of erroneously admitted evidence is thus presumed to be substantially less than it might have been in a trial before a jury." *United States v. Nicholson*, 492 F.2d 124 (5th Cir.1974). Accordingly, the standard for the exclusion of relevant, reliable, and helpful expert testimony on the basis of it being "cumulative" is a difficult one to meet, particularly where the matter is to be tried by a judge, rather than a jury.

An issue similar to that raised by Benson was discussed in *Banks v. United States*, 93 Fed.Cl. 41, 51 (2010). In that matter, the defendant designated three expert witnesses on shoreline composition. *Id.* at 50. The plaintiff sought to exclude the testimony on the grounds that it is cumulative arguing that the experts reach the same opinions and conclusions, do not present "new or different information from the other," and are "duplicative" and merely "bolster one another's opinions." *Id.*

Citing the "extraordinary" nature of the remedy under Rule 403 and the general policy favoring admission, rather than exclusion, of relevant evidence, the court rejected plaintiff's arguments. *Id.* at 51. The court found it significant that although the experts rely on

some of the same evidence as other experts they "may come to that evidence with a different perspective that is potentially helpful to the court." *Id.* (emphasis added). The court also found significance in the fact that "[d]efendant's three experts have unique educational backgrounds." *Id.* That "there is a certain amount of 'overlap' among the three reports" was not determinative of admissibility. *Id.* Rather:

> [t]he mere presence of overlap, reference to another expert's report or a similar conclusion, … does not render an expert report unnecessarily 'cumulative' pursuant to FRE 403. An expert's use of another expert's report does not necessarily render his report cumulative.

*Id.* (emphasis added).

### III. DEFENDANTS EXPERTS' TESTIMONY IS HIGHLY PROBATIVE AND NOT NEEDLESSLY CUMULATIVE.

Benson has not met the high standard for exclusion under the extraordinary remedy available under Rule 403. Benson has not, and cannot, satisfy the standard for "significantly outweighed" and cannot show a "significant tipping of the scales against the evidentiary worth" of defendants' experts' testimony. *Davis*, 639 F.2d at 244. Benson's position is simply that testimony from "multiple experts" on the same valuation issues is "cumulative" and must be excluded because some of the experts' opinions are based on "the same methodologies to reach similar conclusions." Doc. 130.1, p. 4. Benson makes the unsupported argument that "[t]his duplicative testimony will offer little probative value" but will "waste time at trial." *Id.* None of Benson's assertions are correct, much less warrant exclusion of relevant, reliable, and helpful expert testimony. Moreover, Defendants will streamline and coordinate their presentations at trial, so as to not unnecessarily extend the Trial.

The same arguments Benson raises have been rejected by the courts. Review of defendants' experts' reports makes clear that while there is some "overlap" and similarity in

some of the methodologies employed, they are not identical and are not cumulative. Each expert has taken an independent approach to the valuation based on his area of expertise. As in *Banks*, the experts come from different professional backgrounds and have each reached different conclusions in different ways. *Banks*, 93 Fed.Cl. at 51. Certainly, each opinion will be helpful to the Court in the valuation of the various interests at issue. *Id.* Benson has made no showing that presentation of this testimony will needlessly waste time or cause any undue burden or prejudice to Benson.

Contrary to Benson's conclusory assertion that the testimony lacks "probative value," it is clearly relevant and reliable and "contribut[ory] to the determination of the truth." *Kizeart*, 102 F.3d at 325. Accordingly, it cannot be excluded as a "waste of time" because there is no discretion to exclude evidence "when the balance between probative worth" and any countervailing factor is merely "debatable." *Davis*, 639 F.2d at 244. Because this matter is a bench trial, there is little risk that the admission of this evidence will cause any actual prejudice. *Nicholson*, 492 F.2d 124. Benson's Motion raises nothing more than a <u>superficial</u> "debate" as to the probative value of the evidence weighed against the time it will take to present it at trial. *Davis*, 639 F.2d at 244. Benson's arguments are insufficient to justify exclusion of relevant, reliable, and helpful expert testimony. *Id.*

## IV.   THE CASES RELIED UPON BY BENSON DO NOT APPLY.

Moreover, none of the authorities cited by Benson apply. Benson cites *In re Air Crash Disaster*, 86 F.3d 498, 526 (6th Cir.1996). There, a defendant was not permitted to use the plaintiffs' experts' testimony in support of its own claims. Plaintiffs settled their claims against one defendant, Northwest. During the settlement conference it was decided that plaintiffs and Northwest would each proceed in a single trial with their claims against the

remaining defendant, McDonnell Douglas. After plaintiffs settled their claims against McDonnell Douglas, only Northwest's claims against McDonnel Douglas were left to be tried. McDonnell Douglas moved to strike plaintiffs' experts' testimony thereby precluding Northwest from using it against McDonnell Douglas. The trial court granted the motion.

On review, the Sixth Circuit noted that the witnesses were listed by the plaintiffs, not by Northwest. It also rejected Northwest's argument that part of its settlement with plaintiffs was the right to use the plaintiffs' evidence against McDonnell Douglas. *Id.* at 527. The Sixth Circuit further found that the testimony of the three plaintiffs' expert witnesses at issue was entirely duplicative of Northwest's own witnesses:

> Northwest put twenty-four expert witnesses on the stand. The testimony of these experts, taken as a whole, covers every part of the testimony of Kennedy, Rimson, and Mazer. As the court said in *Kendra:* nothing 'suggests that [the expert] would have added to these interpretations a new angle or argument, as opposed to the refrain 'me too'.'

*In re Air Crash Disaster*, 86 F.3d 498, 527 (6th Cir.1996) (quoting *Kendra Oil & Gas, Inc. v. Homco, Ltd.*, 879 F.2d 240, 243 (7th Cir. 1989)).

Here, unlike *In re Air Crash Disaster*, Rosenthal seeks to introduce the testimony of *one* or *two* experts, not *twenty-four* experts. Moreover, Mr. Shanker and Mr. Jones were properly designated by Rosenthal, and are not the witnesses of another party. Benson has not shown, nor can he, that Rosenthal's experts offer the type of "me too" testimony considered excludable in *In re Air Crash Disaster*. Thus, this case has no application here.

Equally unsupportive is *Harbor Ins. Co. v. Cont'l Bank Corp.*, 85 C 7081, 1991 WL 222260, at *5 (N.D. Ill. Oct. 25, 1991). In that matter, the trial court considered several motions in limine, one of which was directed at exclusion of expert testimony. There, the plaintiffs, two insurance companies, filed a joint lawsuit against Continental. Plaintiffs

designated three experts on the same issue, and Continental sought to limit the plaintiffs to a single expert. The trial court granted the motion, in large part, because of a specific local rule and standard pretrial order form of the Northern District of Illinois which allowed only one expert witness on each subject. *Id.* The Eastern District of Louisiana has no similar rule and this Court's Scheduling Order in no way requires Rosenthal and Rowe, to put on a joint defense or employ joint experts. Doc. 42, 84. *Harbor Ins.*, therefore, has no application here.

## CONCLUSION

For the foregoing reasons, Benson's Motion *in Limine* to Exclude Cumulative Expert Testimony should be denied. Benson has not satisfied the standard for exclusion under Rule 403 and has not shown that the probative value of the testimony of defendants' experts is "significantly outweighed" by the risk of presenting cumulative evidence or wasting time at trial. In light of this Circuit's "policy favoring the admissibility of evidence," and because there is virtually no risk of prejudice to Benson, defendants' experts' testimony should be admitted. *Davis*, 639 F.2d at 244; *Nicholson*, 492 F.2d 124.

Respectfully submitted,

/s/*Patrick S. McGoey*
Kyle Schonekas, 11817
Patrick S. McGoey, 24549
Andrea V. Timpa, 29455
Ellie T. Schilling, 33358
SCHONEKAS, EVANS, MCGOEY &
MCEACHIN, LLC
909 Poydras Street, Suite 1600
New Orleans, Louisiana 70112
Telephone: (504) 680-6050
Facsimile: (504) 680-6051

*Attorneys for Robert A. Rosenthal, Trustee*

## CERTIFICATE OF SERVICE

I hereby certify that on May 10, 2016, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

                                                        */s/Patrick S. McGoey*
                                                        Patrick S. McGoey