UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

THOMAS BENSON                                  CIVIL ACTION

VERSUS                                         NO: 15-782

ROBERT ROSENTHAL ET AL.                        SECTION: "H"(2)

ORDER AND REASONS

Before the Court are Defendants' Motions for Judgment on the Pleadings (Docs. 54, 55). For the following reasons, the Motions are denied.

BACKGROUND

This is an action for declaratory judgment. Plaintiff Thomas Benson, appearing as grantor of several trusts, asks this Court to declare that his attempt to exchange certain assets held by those trusts for other assets of equivalent value was effective. Over the course of several years, Plaintiff established various trusts for the benefit of his daughter, Renee Benson, and two grandchildren, Rita Benson LeBlanc and Ryan LeBlanc. Plaintiff created three trusts in 2009 (the "2009 Trusts"), three trusts in 2012 (the "2012 Trusts"), a Grantor Retained Annuity Trust in 2012 ("2012 GRAT Trust"), and

1

a Grantor Retained Annuity Trust in 2014 ("2014 GRAT Trust").[1] Notwithstanding the dispute at issue, these trusts hold ownership interests in various entities that in turn own valuable property, including the New Orleans Saints and Pelicans franchises, the New Orleans Fox television affiliate, automobile dealerships, and the Benson Tower and Champions Square development.[2] Plaintiff asked Defendant Robert Rosenthal to serve as trustee of these trusts. In 2015, Rosenthal resigned as trustee of the 2012 trusts and appointed Defendant Mary Rowe in his place.

The aforementioned trust documents provide Plaintiff with the power to reacquire or exchange property of the trust with property of equivalent value without the approval of the trustee. In January of 2015, Plaintiff exercised this power and sent correspondence to Defendant Rosenthal, stating his intention to exchange the trust assets for promissory notes of equivalent value. This correspondence was sent to Rosenthal on January 12, 2015 but intended to make the exchange effective as of January 1, 2015. With the January 12 correspondence, Plaintiff included a preliminary schedule of values of the trust assets, a Notice of Exchange of trust assets, and blank promissory notes containing a valuation adjustment clause that would operate to adjust the notes automatically to a later-determined appraised value. The transfer also

---

[1] The trusts are the Renee Benson 2009 Irrevocable Trust, the Rita Benson LeBlanc 2009 Irrevocable Trust, the Ryan LeBlanc 2009 Irrevocable Trust, the Renee Benson 2012 Irrevocable Trust, the Rita Benson LeBlanc 2012 Irrevocable Trust, the Ryan LeBlanc 2012 Irrevocable Trust, the Tom Benson 2012 Grantor Retained Annuity Trust, and the Tom Benson 2012 Grantor Retained Annuity Trust.

[2] The parties dispute the effectiveness of the exchange attempted by Plaintiff and whether the trusts at issue still own the assets affected by the exchange.

2

included certain real estate and the forgiveness of nearly $100 million of indebtedness owed to Plaintiff by some of the trusts.

Rosenthal refused to execute the documents required to complete the exchange, stating that such an exchange requires a simultaneous transfer of property. He also stated that an unsecured promissory note is "not an appropriate trust investment" and that he must "make his own independent verification that the assets to be exchanged are of equivalent value [with the trust assets]" before the exchange could occur.[3]

On January 24, 2015, Plaintiff supplemented his exchange request with additional documents, including certifications of the values of each trust signed by Plaintiff, collateral assignments granting the trusts security interests, and seven promissory notes for values based on the most recent valuations available. These promissory notes also contained valuation adjustment clauses. Plaintiff's supplements failed to assuage Rosenthal's concerns, and he again rejected the exchange, stating that there had "not yet been an exchange of assets of equivalent value."[4]

On August 24, 2015, after filing this suit, Plaintiff again supplemented the Notice of Exchange in accordance with the valuation adjustment clauses included in the promissory notes. Plaintiff had retained Empire Valuation Consultants ("Empire") to conduct a valuation of the assets that he sought to remove from the trusts as of December 31, 2014. Empire's services had been used in the valuation of assets of the trusts on prior occasions and had been relied upon by Rosenthal. Based on Empire's updated valuation of the trust

---

[3] Doc. 1-47.
[4] Doc. 1-48.

assets, Plaintiff delivered to Defendants thirteen new promissory notes of specific values and collateral assignments securing each of those notes. Defendants again rejected Plaintiff's exchange.[5]  Plaintiff seeks a judgment from this Court declaring that the exchange was effective.

Defendant Rowe's motion asks this Court to dismiss Plaintiff's action on several grounds.   Defendant Rosenthal has adopted these arguments by reference in his own motion and expounded upon them.  Defendants move this Court for a judgment holding either that (1) Plaintiff's attempted substitution was, in fact, a request for a loan, which the trustee had the discretion to deny, or that (2) Plaintiff's purported substitution did not occur on January 1, 2015 and occurred, at the earliest, on August 24, 2015, if Plaintiff can prove that he exchanged property of equivalent value.

## LEGAL STANDARD

Rule 12(c) provides that a party may move for judgment on the pleadings, after pleadings are closed but early enough not to delay trial.[6]  The standard for determining a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss.[7]  To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face."[8] A claim is "plausible on its face" when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct

---

[5] Docs. 48-4, 48-5.
[6] Fed. R. Civ. Pro. 12(c) (2014).
[7] *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).
[8] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).

alleged."[9]  A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[10]  The court need not, however, accept as true legal conclusions couched as factual allegations.[11]  To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.[12]  The complaint must contain enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim.[13]  If it is apparent from the face of the complaint that an insurmountable bar to relief exists and the plaintiff is not entitled to relief, the court must dismiss the claim.[14]  The court's review is limited to the complaint and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.[15]

## LAW AND ANALYSIS

Defendants ask this Court to make one of two findings: (1) that the exchange attempted by Plaintiff was a loan, which the trustee properly refused or (2) that Plaintiff's purported substitution was ineffective.  This Court will address each argument in turn.

### A. Attempted Exchange as Loan

The trusts at issue are "intentionally defective grantor trusts."  This term refers to a trust intentionally formed to avoid estate tax on the trust's

---

[9] *Id.*

[10] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).

[11] *Iqbal*, 556 U.S. at 678.

[12] *Id.*

[13] *Lormand*, 565 F.3d at 255–57.

[14] *Jones v. Bock,* 549 U.S. 199, 215 (2007).

[15] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

assets.[16]  This is accomplished by including clauses that either give the grantor the power to reacquire trust assets by substituting assets of equivalent value or allow the grantor to borrow trust assets without adequate interest or security.[17]  By retaining this power, the grantor is treated as the owner of those assets for tax purposes pursuant to 26 U.S.C. § 675.  In doing so, the grantor becomes subject to income, gift, and capital gain taxes on those assets, but the assets are not treated as part of his estate.[18]

Three trust provisions are at play in this dispute.  First, each trust states that neither the trustee nor the grantor may exchange or dispose of any part of the principal of the trusts for "less than an adequate consideration in money or money's worth."[19]  Next, the trusts state that the trustee has the right "to loan to the Grantor up to 100% of trust assets" but that such a loan shall be made "upon the terms and conditions as are deemed appropriate by the Trustee" ("Loan Provision").[20]  The trusts then grant the grantor the power to substitute trust assets for other assets of equal value without the approval or consent of the Trustee ("Substitution Provision").[21]

Defendants argue that Benson's proposed exchange was in fact a loan pursuant to the Loan Provision, rather than a substitution pursuant to the

---

[16] *See Petter v. C.I.R.*, 98 T.C.M. (CCH) 534 (T.C. 2009), aff'd sub nom. *Estate of Petter v. C.I.R.*, 653 F.3d 1012 (9th Cir. 2011)

[17] *See* 26 U.S.C. § 675.

[18] *Petter*, 98 T.C.M. (CCH) 534; Mark S. Poker, *Sales to Intentionally Defective Grantor Trusts Here Is How Defects Can Be Positives*, 25 No. 1 PRAC. TAX LAW. 15 (2010).

[19] Doc. 1-3 at p. 4; Doc. 1-4 at p. 4; Doc. 1-5 at p. 4; Doc. 1-6 at p. 5; Doc. 1-7 at p. 5; Doc 1-8 at p. 5; Doc. 1-9 at p. 3; Doc. 1-10 at p. 3.

[20] Doc. 1-3 at p. 17; Doc. 1-4 at p. 17; Doc. 1-5 at p.17; Doc. 1-6 at p. 18; Doc. 1-7 at p. 18; Doc. 1-8 at p. 19. The 2012 and 2014 GRAT Trusts do not include a loan provision.

[21] *See* Doc. 1-3 at p. 16–17; Doc. 1-4 at p. 16–17; Doc. 1-5 at p. 16–17; Doc. 1-6 at p. 18; Doc. 1-7 at p. 18; Doc. 1-8 at p. 19; Doc. 1-9 at p. 9; Doc. 1-10 at p. 10.

6

Substitution Provision.  Defendants argue that Plaintiff's attempted exchange was a loan because he sought an extension of credit from the trusts.  In support, Defendants cite to both non-binding case law and IRS Revenue Rulings.  This Court finds, however, that the Defendant's reliance on these authorities is misplaced.

First, Defendants cite to *In re Condiotti*, an unpublished case from the Colorado Court of Appeals, in which the grantor of an intentionally defective grantor trust attempted to substitute the full value of the trust's assets for a promissory note.[22]  First, the court held that the trustee had the power to determine whether the proposed transaction was a substitution or a request for a loan.  It also held that the record before it supported the probate court's factual finding that the transaction was an attempt to exercise the loan power.[23]  The court made this finding based on the language of the trust and the grantor's intent at the time that it was created.[24] Relying on Colorado precedent, the court considered the following questions in determining whether the transaction was a loan: "1. Do the parties 'stand in the relationship of debtor and creditor?' 2. Was a promissory note executed? 3. Was interest 'agreed to or paid?' 4. Did the parties agree that the recipient would repay the money received?"[25]  The Colorado court answered these questions in the affirmative.  In making its holdings, the court relied on two sources also cited herein by Defendant.  In *Rothstein v. U.S.*, the Second Circuit held that the

---

[22] *In re The Mark Vance Condiotti Irrevocable GST Trust*, No. 14CA0969 (Col. App. July 9, 2015) (citing *Love v. Olson*, 645 P.2d 861 (Colo. App. 1982).

[23] *Id.*

[24] *Id.*

[25] *Id.*

exchange of an unsecured promissory note used by the grantor to purchase trust assets was a loan.[26]   The *Condiotti* court also relied on the Revenue Ruling 85-13, in which the IRS held that a grantor's "receipt of the entire corpus of an irrevocable trust in exchange for an unsecured promissory note given to the trustee, the grantor's spouse, constituted an indirect borrowing of the trust corpus."[27]

Defendants contend that each of these opinions support a finding that Plaintiff's exchange was actually a loan.  This Court, however, finds these cases distinguishable.  The promissory notes offered by the grantors in *Condiotti, Rothstein*, and Revenue Ruling 85-13 were unsecured.  Here, Plaintiff has tendered fully-secured promissory notes based on qualified appraisals bearing adequate interest rates.  In addition, Plaintiff has offered tangible property and other assets to form equivalent value in the attempted substitution.  This Court finds these distinctions significant.  Accordingly, these cases provide this Court with little assistance because they are both distinguishable and non-binding.

Having considered Defendants' arguments and the sources cited in support, this Court remains unpersuaded that Plaintiff's attempted exchange was a loan.  Moreover, Plaintiff has pointed to several factors that weigh toward a finding that it was a substitution.  First, Plaintiff points to the language of the trusts, which solely require that a substitution be for property of equivalent value.  There is no provision in the trusts prohibiting the use of

---

[26] *Rothstein v. United States*, 735 F.2d 704, 707 (2d Cir. 1984).
[27] Rev. Rul. 85-13, 1985 WL 286711.

a promissory note, which certainly has value, in a substitution.  Indeed, under Texas law a promissory note may be a trust asset.[28]

Second, the real estate and loan forgiveness that Plaintiff offered as part of the substitution are further proof that a loan was not intended.  This additional property weighs in favor of a finding that a substitution was made.  If Plaintiff was merely requesting a loan, this additional property would be superfluous.

Accordingly, this Court is not persuaded by either the cited authority or the facts before it to hold that Plaintiff's attempted substitution of assets was a loan.  A determination that a transaction is a loan is a finding of fact, and this Court holds that such a finding would be premature at this stage.[29] Defendants' Motions for Judgment on the Pleadings on this issue are denied.

## B. Attempted Exchange as Substitution

Next, Defendants argue that if Plaintiff's exchange was a substitution, it was ineffective.  Specifically, they allege that Plaintiff's exchange could not have occurred retroactively to January 1, 2015, because the language of the trusts requires that a contemporaneous exchange of property of equivalent value be made in order to effect a substitution.  In addition to the Substitution Provision, Defendants point to the provision of the trusts that states that neither the grantor nor the trustee may "purchase, exchange or otherwise deal with or dispose of all or any part of the principal or income of the Trust for less

---

[28] *Carter v. DeJarnatt*, 523 S.W.2d 88, 91 (Tex. Civ. App. 1975) ("A promissory note constitutes 'personal property' in the sense that it may be owned as a trust asset.").

[29] *See Beausejour Corp., N.V. v. Offshore Dev. Co.*, 802 F.2d 1319, 1320 (11th Cir. 1986).

than an adequate consideration in money or money's worth."[30]  Defendants allege that the trustee has the obligation to delay a purported substitution to ensure that the grantor is offering property of equivalent value.  Defendants argue that, at the earliest, the substitution may have occurred on August 24, 2015, but only if Plaintiff can show that equivalent value was tendered on that date.

Plaintiff responds that Defendants' reading of the trusts requiring a contemporaneous exchange of assets of equivalent value is both incorrect and impractical.  Plaintiff argues that because of the nature of the trust assets, valuation of those assets will necessarily take time and be based on some date in the past.  Therefore, Plaintiff was justified in choosing January 1, 2015 as the date upon which to effectuate the substitution, which he has an absolute right to undertake.  Plaintiff also notes that the value adjustment feature of his promissory notes allowed for the substituted property to be adjusted automatically to ensure that equivalent value was being given.

At its core, this is an issue of trust interpretation. Courts interpret trust instruments as they do contracts.[31]  By their express terms, the trusts at issue are governed by Texas law.[32]  "Generally, Texas courts endeavor to enforce trusts according to the settlor's intent, which [is] divine[d] from the four corners of unambiguous trusts."[33] "To the extent the trust instrument is silent,

---

[30] *See* Doc. 1-8 at p. 5.
[31] *Goldin v. Bartholow*, 166 F.3d 710, 715 (5th Cir. 1999).
[32] *See* Docs. 1-3–1-10.
[33] *Rachal v. Reitz*, 403 S.W.3d 840, 844 (Tex. 2013).

the provisions of the Trust Code govern."[34] Extrinsic evidence may be
introduced only when the trust is ambiguous.[35]

  The Substitution Provisions in the trusts at issue here differ slightly.
The Substitution Provisions in the 2009 Trusts read as follows:

> Notwithstanding any other provision of this agreement to the
> contrary, the Grantor hereby reserves the right and authority,
> exercisable in a nonfiduciary capacity and without the approval
> or consent of any person in a fiduciary capacity, to reacquire or
> exchange any property of the Trust created hereunder by
> substituting other property of an equivalent value; however, if
> this power of substitution is exercised, the Grantor shall certify
> in writing that the substituted property is of equivalent value
> to the property for which it is substituted and the Trustee has
> a fiduciary obligation independently to verify that the
> properties acquired and the properties substituted by the
> Grantor are in fact of equal value. Any dispute regarding the
> value of the substituted property may be resolved in an
> appropriate court. This power is intended to create grantor
> trust status under section 675(4) of the Code.[36]

The Substitution Provisions in the 2012 Trusts, although less specific, express
an identical power, stating:

> Notwithstanding any other provision of this agreement to the
> contrary, the Grantor hereby reserves the right and authority,
> exercisable in a nonfiduciary capacity and without the approval or
> consent of any person in a fiduciary capacity, to reacquire or
> exchange any property of the Trust created hereunder by
> substituting other property of an equivalent value.  This power is

---

[34] *Myrick v. Moody Nat. Bank*, 336 S.W.3d 795, 802 (Tex. App. 2011).
[35] *In re Ray Ellison Grandchildren Trust*, 261 S.W.3d 111, 117 (Tex. App. 2008).
[36] Docs. 1-3, 1-4, 1-5.

11

intended to create grantor trust status under section 675(4) of the Code.[37]

Both the 2012 GRAT Trust and the 2014 GRAT Trust contain Substitution Provisions substantially similar to those in the 2012 trusts.[38]

Having considered the plain language of these provisions, the Court finds that the grantor's intent is unambiguous. The trusts grant him the unilateral power to substitute assets, and while the trustee must ensure equivalent value, he does not have the power to prevent such an exchange.

The Substitution Provision of the 2009 Trusts clearly grants the grantor the power to effect a substitution without approval. To do so, however, he must first "certify in writing that the substituted property is of equivalent value to the property for which it is substituted." The provision then states that "the Trustee has a fiduciary obligation independently to verify that the properties acquired and the properties substituted by the Grantor are in fact of equal value. Any dispute regarding the value of the substituted property may be resolved in an appropriate court."[39] Clearly, the grantor has the unilateral power to effect the substitution, provided that he certify that it is of equivalent value. The trustee must then verify that the substituted assets are indeed of equivalent value. The trusts do not say, however, that he may delay the substitution while such a verification is made. To be sure, the provision speaks of the substitution in the past tense, stating that the trustee must value the "substituted" and "acquired" property. The provision says that a disagreement

---

[37] Docs. 1-6, 1-7, 1-8.
[38] Docs. 1-9, 1-10.
[39] Docs. 1-3, 1-4, 1-5.

regarding valuation should be brought to the courts for resolution.   Under Defendants' reading, which would allow the Trustee to block a substitution until he was satisfied that it was of equivalent value, the phrase "without the approval or consent of any person" would be rendered meaningless.   The Trustee would be able to block the exchange indefinitely while valuation was disputed, as was attempted in this case.   "[T]he court should construe the instrument to give effect to all its provisions so that no provision is rendered meaningless."[40]

In addition to rendering parts of the Substitution Provision meaningless, Defendants' reading of the trusts leads to absurd results.   Defendants would have this Court read the trusts to require that before a substitution can occur the grantor must offer substituted assets based on an up-to-the-minute valuation to which the trustee agrees.   Such a requirement would all but prevent Plaintiff from making such an exchange.   The trust assets at issue here are units of closely-held LLCs owning sports franchises and other real estate that are not readily valued.   Valuation of these assets necessarily takes time, making an up-to-the-minute valuation nearly impossible.   In addition, the trustee's verification of equivalent value likewise takes time.   Plaintiff is practically incapable of obtaining a valuation of the assets as of the exact day on which he tenders promissory notes of equivalent value, just as the trustee would be incapable of verifying the equivalence of value before the valuation was deemed inaccurate by the passage of time.   Defendants have offered no solution as to how Plaintiff should provide an up-to-the-minute valuation of

---

[40] *Myrick*, 336 S.W.3d at 802.

the trust assets in order to effect the contemporaneous exchange of equivalent value that they say is required.  As a practical matter, valuation of the trust assets must necessarily be based on some date in the past.  This Court does not read the Substitution Provisions of these trusts as requiring a contemporaneous exchange.  The trusts merely require that when a grantor unilaterally effects a substitution, he is bound to offer equivalent value in exchange.

Although the Substitution Provisions of the 2012 Trusts and the 2012 and 2014 GRAT Trusts differ from that discussed above, this Court holds that an identical reading is warranted.  These provisions also unequivocally grant Plaintiff the unilateral power to substitute assets without the approval of any person.  While the exchange must be of equivalent value, these Substitution Provisions likewise do not allow the Trustee to block the exchange pending a determination of equivalent value.  Such a reading would render the "without consent or approval of any person" clause meaningless.  The grantor's intent in these Substitution Provisions, just as those in the 2009 Trusts, was to have the unilateral power to effect a substitution.  If the trustee disagrees with the value of the substituted property, such can be disputed without delaying the exchange, which the grantor clearly has the right to make.

Applying this interpretation to the facts at hand, this Court holds that if the attempted exchange was a substitution, it was effective on January 24, 2015.  It is on that date that Plaintiff provided the trustee with a certification of value of the substituted property, as required by the 2009 Trusts, and promissory notes purporting to be of equivalent value, as required by all trusts. Each of these promissory notes also included a valuation adjustment clause,

14

stating that "[i]f there is a final determination that the value of this Note is not equal to the Net Value, [Plaintiff] shall reform this Note to reflect the Net Value as finally determined."[41]  As Plaintiff points out, "[t]his feature allows trustees time to confirm equivalence of values, and to ensure equivalent value is given by automatically adjusting the face value of the promissory notes as necessary."[42]   Plaintiff complied with all of the requirements of the Substitution Provisions of the trusts to effect a substitution on January 24, 2015.  Defendants must now comply with their obligations under the trusts in confirming the equivalence of value as of that date.

## CONCLUSION

For the foregoing reasons, Defendants' Motions for Judgment on the Pleadings are denied.

New Orleans, Louisiana this <u>16th</u> day of May, 2016.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[41] *See* Doc. 56-5 at ¶ 6.
[42] Doc. 56 at p. 21.

15