UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

THOMAS MILTON BENSON, JR.                    CIVIL ACTION

VERSUS                                       NO. 15-782

ROBERT A. ROSENTHAL ET AL.                   SECTION "H" (2)

## ORDER AND REASONS ON MOTION

Plaintiff Thomas M. Benson's Motion to Compel, Record Doc. No. 112, is pending before me.  Specifically, Benson seeks additional responses and/or document production in response to his Interrogatories Nos. 1 through 6 and Requests for Production Nos. 3, 4, and 17 to defendant Robert Rosenthal and Interrogatories Nos. 1 and 2 and Requests for Production Nos. 3 and 18 to defendant Mary Rowe.  Determination of the motion was deferred pending in camera review of certain  materials withheld from production by the defendants.  Written opposition memoranda were filed, Record Doc. Nos. 151 and 152, and oral argument was conducted on May 18, 2016.  Benson filed a reply memorandum, Record Doc. Nos. 162-164, and defendants submitted the in camera materials for my review.

Having conducted the in camera review and considered the record, the applicable law, the written submissions of the parties and the oral argument of counsel, **IT IS ORDERED** that the motion is GRANTED IN PART, DENIED IN PART AND DISMISSED AS MOOT IN PART as follows.

(A)   <u>INTERROGATORIES</u>

The motion is denied as to Interrogatories Nos. 1 and 2 to Rosenthal.  Although the "common interest privilege" objection is overruled for the reasons discussed below, the responsive information provided in the current answers is sufficient concerning "the process" to which these interrogatories are directed.  The more detailed information that plaintiff seeks through this motion is not requested in the interrogatories and is more conveniently obtained through deposition testimony, which plaintiff has had ample opportunity to conduct.  Fed. R. Civ. P. 26(b)(2)(C).

The motion is granted as to Interrogatory No. 3, as to which Rosenthal has provided <u>no</u> responsive information, and as to Interrogatory No. 4, as to which Rosenthal has provided responsive information so vague and general that it must be characterized as "evasive or incomplete."  Fed. R. Civ. P. 37(a)(4).  Providing the mere identity of the persons or documents that are the subject of these interrogatories can in no way reveal privileged communications or work product.  As to the requested descriptions of the subject information, especially the documents, the privilege objections are largely without merit, subject to the same determination overruling or sustaining them as set out below in connection with the requests for production.

The motion is granted in part and denied in part as to Interrogatory No. 5 to Rosenthal and Interrogatory No. 1 to Rowe.  The motion is denied insofar as it seeks a description of any discussions between or among the trustees and/or their counsel because those discussions are privileged, including by the applicable common interest and/or allied

2

litigant doctrines discussed below.  In all other respects, the motion is granted as to this interrogatory.  As discussed below, the subject discussions of the other named persons with the trust beneficiaries are not privileged.  No plausible explanation why discussions with any CPA could be privileged and no evidence sustaining the trustees' applicable burden concerning any accountant-client privilege have been provided.  The reference to unidentified "lenders and potential lenders" is so vague and general that it must be characterized as "evasive or incomplete." Fed. R. Civ. P. 37(a)(4).  The objection that this interrogatory is "not reasonably calculated to lead to the discovery of admissible evidence," Record Doc. No. 112-5 at p. 5 is overruled, both because it is without merit under Fed. R. Civ. P. 26(b)(1) as it existed at the time this lawsuit was filed and because it has been deleted from the current version of the rule and was not a valid ground for objection at the time the objection was asserted.

The motion is granted in part and denied in part as to Interrogatory No. 6 to Rosenthal and Interrogatory No. 2 to Rowe.  The motion is denied insofar as it relates to defendants' assertion of the mediation privilege, which applies to the extent discussed below.  The motion is granted in all other respects.  The privilege and work product objections as to the requested information concerning the individuals named in this interrogatory are overruled for the reasons discussed below.

In addition, the copies of defendants' interrogatory answers provided to me in connection with this motion do not include the verification of interrogatory answers, sworn

under oath as required by Fed. R. Civ. P. 33(b)(1), (3) and (5).  If the required verifications have not already been provided, defendants must do so.

(B)    <u>REQUESTS FOR PRODUCTION</u>

The motion is denied as to Requests for Production No. 17 to Rosenthal and No. 18 to Rowe.  Rosenthal's opposition memorandum, Record Doc. No. 151 at p. 23, and supplemental written response to Request No. 17, Record Doc. No. 151 at p. 2, clearly state that all appropriate responsive materials have been provided and that "[t]here are no additional documents responsive to this request in [his] possession, custody, or control." Similarly, Rowe's written opposition, Record Doc. No. 152 at p. 6 n.15, read in conjunction with her supplemental written response to Request No. 18, Record Doc. No. 152-1 at pp. 2-6, establishes that she has now "produced all documents or data provided to her testifying experts."  These responses are sufficient.

Rowe's proportionality objection to Request for Production No. 3 to her[1] is without merit and summarily overruled.  However, the motion presents a difficult issue arising from its request to compel document production in response to Requests Nos. 3 to both Rosenthal and Rowe, which are identical, and No. 4 to Rowe.  Requests Nos. 3 to both trustees seek production of documents reflecting communications among the trustees and the beneficiaries and/or their representatives concerning the assets and their exchange that are the basis of this action.  Request No. 4 to Rosenthal seeks materials reflecting his

---

[1] Rosenthal asserted no such objection to identical Request No. 3 submitted to him.

involvement in establishing or drafting the subject trust documents. The trustees have objected to these requests on attorney-client privilege, common interest privilege, work product and mediation privilege grounds. For the reasons discussed below, I find that no common interest for privilege purposes has been established within the narrow definition of that term provided by the applicable law. I further find that neither trustee is the representative or attorney of the beneficiaries or the beneficiaries' representatives, and vice versa, for purposes of the attorney-client privilege or the work product doctrine. Therefore, defendants' assertions of these protective doctrines as objections to these discovery requests are overruled. The mediation privilege, which has been asserted more narrowly only as to a few items, will be separately discussed below.

The threshold difficulty in reaching the foregoing conclusions arises from identification of the law applicable to this issue, especially as it relates to the common interest privilege, which differs materially among the potentially applicable sources of law. Fed. R. Evid. 501 provides in pertinent part: "The common law – as interpreted by United States courts in the light of reason and experience – governs a claim of privilege. . . . <u>But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision</u>." (Emphasis added). As Magistrate Judge Bourgeois of the Middle District of Louisiana has cogently stated: "Rule 501 is silent . . . regarding how the court must determine the 'state law' governing privileges." <u>Shaw Group, Inc. v. Zurich Am. Ins. Co.</u>, No. 12-257-JJB-RLB, 2014 WL 1784046, at *7 (M.D. La. May 5, 2014) (Bourgeois, M.J.).

Lead commentators have discussed three approaches for interpreting Rule 501 when faced with a horizontal choice of law issue: "(1) [a]ssume that the state "which supplies the rule of decision" is the state which also supplies the privilege law; (2) apply the privilege rules of the state in which the federal court sits; or (3) apply the conflict of law doctrine of the state in which the federal court sits." KL Grp. v. Case, Kay & Lynch, 829 F.2d 909, 918 (9th Cir. 1987) (citing Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure, § 5435, 865-69 (1980)).  The Fifth Circuit has endorsed the third approach to Rule 501, which requires the court to apply the choice-of-law rules of the forum state to determine the governing law for attorney-client privilege.  See Miller v. Transamerican Press, Inc., 621 F.2d 721, 724, opinion supplemented on denial of reh'g, 628 F.2d 932 (5th Cir. 1980).  This approach is consistent with the Erie doctrine, which requires federal courts sitting in diversity to apply the forum state's substantive law, including its choice-of-law rules.  See Klaxon v. Stentor Electric Mfg. Co., 313 U.S. 487, 495-96 (1941).

Id.; see Plotkin v. N. River Ins. Co., No. 12-1077, 2012 WL 2179103, at *4-5 (E.D. La. June 12, 2012) (Knowles, M.J.) (applying forum state's choice of law rules to decide which state's privilege law applies when there is a conflict between the forum state's privilege law and that of the state that supplies the substantive rule of decision).

In a footnote, however, with particular significance to the issue in the instant case, Magistrate Judge Bourgeois pointed out:

Several decisions in the Fifth Circuit appear to endorse the first approach to Rule 501 in the absence of any clear need to conduct a choice-of-law analysis.  See, e.g., Dunn v. State Farm Fire & Cas. Co., 927 F.2d 869, 875 (5th Cir. 1991) ("Since [Mississippi] state law provides the rule of decision, Mississippi law is determinative of the attorney client privilege.").  In fact, this court has applied the first approach in resolving a motion to quash a deposition filed by Zurich where there was no clear choice of law issue. (See R. Doc. 234 at 4, n. 3).  Some courts have explicitly endorsed the first approach to Rule 501, however, where the substantive law has already been determined through choice-of-law principles.  See, e.g., United States Sur. Co. v. Stevens Family Ltd. P'ship, No. 11 C 7480, 2014 WL 902893 (N.D. Ill. Mar. 7, 2014) ("Once the court has, by applying appropriate choice of law

6

principles, determined the substantive law applicable to a claim based on state law, the privilege issues are determined by that same state's law.").

Shaw Group, 2014 WL 1784046, at *7 n.10.

The instant case unquestionably is a civil case with "a claim or defense for which state law supplies the rule of decision," indicating under Rule 501 that state law would govern this privilege claim. Specifically, plaintiff has expressly and appropriately invoked this court's diversity of citizenship jurisdiction because plaintiff is a Louisiana citizen and the two defendant trustees are Texans. Several trusts, formed, documented and administered pursuant to Texas state law, are at the heart of plaintiff's claims. The trust documents contain an express Texas choice of law provision. Count 1 of the two-count complaint seeks declaratory relief that defendants' rejection of Benson's asset exchange "is in violation of the terms of the trust instruments." Record Doc. No. 1, Complaint at p. 16, ¶ 60. However, the complaint also asserts that federal question jurisdiction exists under 28 U.S.C. § 1331. Id. at p. 2, ¶ 3. The asserted federal claim is for declaratory relief that defendants' rejection of Benson's asset exchange "is in violation of federal law;" specifically, 26 U.S.C. § 675(4), a provision of the federal Internal Revenue Code. Record Doc. No. 1, Complaint at p. 16, ¶ 60. Thus, plaintiff has alleged that defendants' actions are both "contrary to federal law and in violation of the terms of the trust instruments." Id. at p. 16, ¶ 56.

Of course, no choice of law analysis is necessary if the possibly applicable sources of law concerning the asserted common interest privilege do not actually conflict. Shaw

Group, 2014 WL 1784046, at *3; Plotkin, 2012 WL 2179103, at *4.  I find that three sources of law could possibly apply in this instance:  the federal general common law of the Fifth Circuit; Texas state law, which  provides the rules of decision as to the state law claims relating to the trusts; and the law of the forum state, Louisiana.  The basic contours of  the  attorney-client  privilege  are  substantially  similar  in  the  law  of  these  three possibilities.  However, much difficulty and uncertainty arises in attempting to reconcile their law as to the common interest privilege specifically.

As to the common interest privilege, I find that Texas law actually conflicts with Louisiana law, and I follow the determination of the Texas Supreme Court that its law in this regard also is "in contrast to" the federal common law of the Fifth Circuit.  Texas Evidence Rule 503(b)(1)(C) provides that the privilege applies to communications "by the client, the client's representative, the client's lawyer, or the lawyer's representative to a lawyer representing another party in a pending action, if the communications concern a matter of common interest in the pending action."  Tex. R. Evid. 503(b)(1)(C) (emphasis added).  Texas case law indicates that this narrow Texas common interest rule protects only persons who are co-litigants, either co-plaintiffs or co-defendants, in the same pending action, not in separate cases.  The Texas Supreme Court has noted that the Texas evidence rule is

> generally applied . . . to joint defense situations where multiple defendants, represented by separate counsel, work together in a common defense. Notably, and in contrast to the proposed federal rule, Texas requires that the communications be made in the context of a pending action.  Although criticized, the pending action requirement limits the privilege "to situations

> where the benefit and the necessity are at their highest, and . . . restrict[s] the opportunity for misuse. . . .  Thus, in jurisdictions like Texas, which have a pending action requirement, no commonality of interest exists absent actual litigation.  Accordingly, our privilege is not a "common interest" privilege that extends beyond [actual] litigation.  Nor is it a "joint defense" privilege, as it applies not just to defendants but to any parties to a pending action.  [Texas] Rule 503(b)(1)(C)'s privilege is more appropriately termed an 'allied litigant' privilege.

In re XL Specialty Ins. Co., 373 S.W.3d 46, 51-52 (Tex. 2012).  The Texas Supreme Court further clarified that its "allied litigant doctrine protects communications made between a client, or the client's lawyer, to another party's lawyer, not to the other party itself."  Id. at 52-53 (emphasis added).

Significantly, the XL Specialty decision indicates by citation in a footnote that the Texas Supreme Court views the Texas rule as standing "in contrast" not only to the proposed but never enacted federal evidence rule, but also to the federal Fifth Circuit's decision under federal common law in In re Santa Fe Int'l Corp., 272 F.3d 705, 710 (5th Cir. 2001), insofar as the Fifth Circuit decision noted "that the common interest privilege applies to both communications between co-defendants in actual litigation and their counsel as well as to 'communications between potential co-defendants and their counsel.'"  XL Specialty, 373 S.W.3d at 52 n.7 (emphasis in original).  In a more recent decision applying federal common law, BCR Safeguard Holding, L.L.C. v. Morgan Stanley Real Estate Advisor, Inc., 614 F. App'x 690, 703 (5th Cir. 2015), the Fifth Circuit adhered to its inclusion of "potential co-defendants and their counsel" in its definition of the common interest privilege; thus continuing in place the conflict between its federal common law and

Texas state law identified in XL Specialty.  The BCR Safeguard decision stated that the Fifth Circuit has not addressed whether the common interest privilege is inapplicable to co-plaintiffs, and the court did not reach that issue in BCR Safeguard.  The BCR Safeguard court indicated in a footnote, however, that "we also question whether the [common interest] privilege could apply to any communications between" the parties in that case because they "were not 'co-plaintiffs'" in the related litigation in which the communications occurred.  Id. at 704 n.20.

In broader language than its Texas counterpart, Louisiana's Code of Evidence article 503(B)(3) extends the privilege to communications "concerning a matter of common interest" generally, without any Texas-like requirement that the common interest must be as co-litigants in a pending action.  In this regard, the Louisiana evidence article is substantially similar to proposed, but never enacted, Fed. R. Evid. 503(b)(3).  See Steven Goode & Olin Guy Wellborn III, Courtroom Handbook on Federal Evidence 350-53 (2015).  My research indicates that most reported Louisiana decisions concerning the common interest privilege address situations in which those asserting the doctrine are actually co-litigants.  I have located one decision applying Louisiana evidence law, however, with facts, language and a result from which it might be inferred that the Louisiana common interest privilege may apply in situations not involving co-litigants in a pending action.  See Excess Ins. Co. v. Saunee, No. 95-3024, 1996 WL 409224, at *3 (E.D. La. July 19, 1996) (Clement, J.).

Having concluded that Louisiana and Texas law conflict, I also conclude that, whether I apply the first or the third approach discussed above in the Shaw Group decision, both of which the Fifth Circuit has endorsed, Texas law governs the trustees' assertion of the common interest privilege in this instance. As to the first approach, it is undisputed that the trust instruments contain a Texas choice of law provision that will be applied in this case. Thus, Texas state law clearly supplies the rule of decision.

Under the third approach, the choice of law principles of the forum state, Louisiana, are used to determine which state's law should apply in the instant case. Klaxon, 313 U.S. 487; McGee v. Arkel Int'l, L.L.C., 671 F.3d 539, 542 (5th Cir. 2012). The factors that must be evaluated under Louisiana choice of law principles are found in Louisiana Civil Code article 3515, with additional reference in this instance to Louisiana Civil Code articles 3537 and 3540.

Considering those factors in this case, I find that Texas law applies over Louisiana law. Specifically, I find that the policies of Texas "would be most seriously impaired if its law were not applied to that issue" of the common interest privilege. La. Civ. Code art. 3515. The trusts at issue are Texas trusts. They contain a Texas choice of law provision. The two trustees are Texans. Two of the three trust beneficiaries are Texans.[2] Most of the lawyers involved in the subject communications are Texans. The justified expectations of Texans engaging in communications with lawyers affecting Texas trusts is that the

---

[2]At oral argument, counsel were unable to state whether the third beneficiary, Rita Benson LeBlanc, is a Louisianian or a Texan.

privileged nature of such communications, if any, will be governed by Texas law, just as interpretation of the trusts themselves is governed by Texas law.  Trust assets include ownership of shares in several Texas companies.  Record Doc. No. 36 at p. 7.  Although substantial portions of the trust assets that are the subject of the exchange are sited in Louisiana, the two sports teams included in those assets engage in a substantial part of their business activities outside of Louisiana, including in Texas.  Certainly, "the policies of facilitating the orderly planning of transactions," La. Civ. Code art. 3537, in the context of these Texas trusts are best advanced by the application of Texas law.

Applying applicable Texas law, which the Texas Supreme Court characterizes not as "common interest privilege" but as the "allied litigant doctrine," I overrule defendants' objections and find that the subject communications are not privileged.  The beneficiaries are not co-parties with the trustees in the instant pending action.  The trustees were not co-parties with the beneficiaries in the Louisiana state court competency action that has been referred to by defendants as part of the arguably related litigation giving rise to their common interest privilege claim.  I have been provided with no evidence that the trustees and the beneficiaries have been co-litigants in any pending action.  In addition, one trustee testified that when limited communications occurred between him and the beneficiaries, "our attorneys were there and their attorneys were there."  Id. at p. 7.  As noted above, Texas law limits the subject privilege to protect communications made between a client, or the client's lawyer, to another party's lawyer, not to the other party itself.

I also find that in this case, in which both diversity and federal question jurisdiction have been asserted, Texas law should be applied to this issue over federal common law. As noted above, the Texas Supreme Court has stated that its law in this regard is "in contrast to" the federal common law of the Fifth Circuit. In the instant case, federal law provides the rule of decision on plaintiffs' federal claims, while state law provides the rule of decision on the state law claims. "Rule 501 makes it clear that state privilege law will apply in diversity cases, and that federal privilege law will apply in federal question cases. However, in federal question cases where <u>pendent</u> state law claims have been asserted, the rule is <u>equivocal</u>." <u>In re Combustion, Inc.</u>, 161 F.R.D. 51, 53 (W.D. La.), <u>aff'd</u>, 161 F.R.D. 54 (W.D. La. 1995) (citing <u>Hancock v. Hobbs</u>, 967 F.2d 462, 466 (11th Cir. 1992); <u>Hancock v. Dodson</u>, 958 F.2d 1367 (6th Cir. 1992); <u>Am. Civil Liberties Union of Miss., Inc. v. Finch</u>, 638 F.2d 1336, 1343 (5th Cir. Unit A March 1981)) (emphasis added).

"[T]he weight of authority among courts that have confronted this issue in the context of discovery is that the federal law of privilege governs even where the evidence sought might be relevant to pendent state law claims." <u>Robertson v. Neuromed. Ctr.</u>, 169 F.R.D. 80, 82-83 (M.D. La. 1996) (citing <u>Hancock</u>, 967 F.2d at 466; <u>von Bulow by Auersperg v. von Bulow</u>, 811 F.2d 136, 141 (2d Cir. 1987); <u>Wm. T. Thompson Co. v. Gen. Nutrition Corp.</u>, 671 F.2d 100, 104 (3d Cir. 1982); <u>Mem'l Hosp. v. Shadur</u>, 664 F.2d 1058, 1061 n.3 (7th Cir. 1981); <u>In re Combustion</u>, 161 F.R.D. at 54; <u>Pagano v. Oroville Hosp.</u>, 145 F.R.D. 683, 687 (E.D. Cal. 1993)); <u>accord</u> <u>Guzman v. Mem'l Hermann Hosp. Sys.</u>, No. H-07-3973, 2009 WL 427268, at *4 (S.D. Tex. Feb. 20, 2009) (citing <u>Agster v.</u>

Maricopa Cnty., 422 F.3d 836, 839 (9th Cir. 2005); Virmani v. Novant Health, Inc., 259

F.3d 284, 287 n.3 (4th Cir. 2001); Pearson v. Miller, 211 F.3d 57, 66 (3d Cir. 2000);

Wm. T. Thompson Co., 671 F.2d at 104; Hancock, 967 F.2d at 466; Hancock, 958 F.2d

at 1373; von Bulow, 811 F.2d at 141; Mem'l Hosp., 664 F.2d at 1061 n.3; Robertson,

169 F.R.D. at 82).

In the instant case, if the general federal common law of the Fifth Circuit applied,

the outcome – though less clear – would likely be the same as applying Texas state law.

Unlike Texas law, the Fifth Circuit case law noted above recognizes that the common

interest privilege may arise as to "potential" litigation co-parties.  However, unlike other

federal circuits, "the Fifth Circuit requires there be some 'palpable threat of litigation at the

time of the communication' in order for the common legal interest extension of the

attorney-client privilege to apply."  United States v. Impastato, No. 05-325, 2007 WL

2463310, at *4 n.15 (E.D. La. Aug. 28, 2007) (quoting United States v. Newell, 315 F.3d

510, 525 (5th Cir. 2002)) (citing Santa Fe Int'l, 272 F.3d at 711).  "Thus, a cognizable

common legal interest does not exist if a group of individuals seeks legal counsel to avoid

conduct that might lead to litigation, but rather only if they request advice to 'prepar[e] for

future litigation.'"  Newell, 315 F.3d at 525 (quoting Santa Fe Int'l, 272 F.3d at 713)

(emphasis added).  Newell indicated that such future litigation must be not merely possible,

but imminent.  Id. at 525-26 (emphasis added); see also Santa Fe Int'l, 272 F.3d at 711

(common interest exception did not apply to co-defendants in antitrust action because they

were not jointly represented in ongoing or threatened litigation when, many years before the action commenced, attorney opinions regarding potential antitrust exposure were circulated among them).

In this case, defendants suggest that the trustees and beneficiaries shared a common interest in the separate – and ultimately unsuccessful – competency proceedings against Benson pursued by the beneficiaries – not the trustees – in Louisiana state court and in Texas state court proceedings concerning different trusts. The trustees and beneficiaries were not co-litigants in those proceedings. As to the Louisiana competency case, defendants' argument appears to be that, if Benson had been ruled incompetent as of the time he initiated the subject asset exchange, the trustees and beneficiaries may have become joint plaintiffs in litigation to nullify the asset exchange on that ground. I conclude that, under the general federal common law of the Fifth Circuit, such a speculative common interest, which is now apparently foreclosed by the outcome of the Louisiana state proceedings, would implicate merely possible, not imminent, potential litigation as to which no common interest privilege would apply.

Nevertheless, to the extent that Texas and Fifth Circuit federal common law conflict, Texas state law should apply to this issue. The plain language of Fed. R. Evid. 501 – "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision" – compels that result. In addition, for reasons similar to those addressed above, Texas interests predominate as to this issue. The Texas trusts with their Texas choice of law provisions are the heart of this case. The federal Internal Revenue Code provision that

plaintiff relies upon for his federal cause of action is part of this case principally because the trust instruments themselves refer to it. Record Doc. No. 1 at pp. 4, ¶'s 16-17; 6 ¶'s 26-27 and 7 ¶'s 32-33. No federal cause of action like the one asserted in plaintiff's complaint would exist without the trust instruments. A separate subject matter jurisdictional basis, diversity of citizenship, supports adjudication of the state law claims in this case.

Accordingly, defendants' common interest privilege objections to Requests for Production Nos. 3 and 4 to Rosenthal and No. 4 to Rowe are overruled.

For purposes of determining who may be a "representative" of the trustees and/or the beneficiaries for purposes of the attorney-client privilege or the work product doctrine, I find that Texas, Louisiana and the general federal common law of the Fifth Circuit are substantially similar. Compare Tex. R. Evid. 503(a)(2) with La. Code Evid. art. 506(A)(2); see Fed. R. Civ. P. 26(b)(3) ("Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)"). I further find, however, that neither the trustees nor the beneficiaries are "representatives" of each other for these purposes.

The deposition testimony of the trustees and two of the beneficiaries submitted by the parties in connection with this motion belie any such conclusion. See, e.g., Record Doc. No. 112-10 at pp. 10-11 (quoting testimony of one trustee and two beneficiaries). One trustee testified that, as trustee, he owes duties to both plaintiff as the trust grantor, Record Doc. No. 112-11 at p. 3, and the beneficiaries. The trustee makes clear that he has

not acted as an attorney for the beneficiaries in any of the litigation from which the alleged common interest arises and that he is not sure whether the beneficiaries favor or oppose his position in this case, stating that they are "leaving the exchange to us as the trustees." Id. at pp. 4-5.  He states that when limited communications with the beneficiaries occurred, "our attorneys were there and their attorneys were there." Id. at p. 7.  Two beneficiaries flatly denied having given the trustee directions concerning the exchange or having exercised any judgment in connection with it.  Record Doc. No. 112-12 at pp. 4, 6-8; Record Doc. No. 112-13 at pp. 2-3.

Rosenthal's affidavit addressing this issue, Record Doc. No. 151-2, is a carefully worded study in the walking of a fine line.  Nowhere does the affidavit clearly state that the beneficiaries authorized him to be their representative for purposes of obtaining or giving legal advice or preparing materials in anticipation of litigation or for trial.  While the information he provided may have facilitated the rendition of legal advice, as his affidavit states, or the preparation of work product, which it does not state, I find that legal advice and work product were rendered by others, not him.  Most of the "advice" described in the affidavit appears to have been personal, family relations or "business advice," although the affidavit fails to explain why or for what business purpose a lawyer like Rosenthal would be consulted for "business advice" when Tom Roddy, whose role is addressed below, was apparently relied upon by the beneficiaries for that purpose.  The affidavit states that when the beneficiaries asked Rosenthal for legal advice, he referred them to a lawyer.  Reading his affidavit as a whole and in context with the deposition testimony, I find it more

17

probable than not that, when Rosenthal provided information to the beneficiaries and their lawyers and other representatives, including Roddy, he did so in fulfillment of his obligations as trustee to give them information about the assets and administration of the trusts, not as the beneficiaries' representative for purposes of the attorney-client privilege or Fed. R. Civ. P. 26(b)(3).

Rosenthal was prudent in avoiding the role of representative of the beneficiaries for attorney-client privilege and work product purposes. Trustees who might place themselves in the position of being representatives of beneficiaries for such purposes would risk compromising their role as fiduciaries who must administer the trust independently according to the terms of the trust instruments for the benefit of the beneficiaries. The grantor creates a trust by devising property to the trustee, who holds the trust property for the benefit of the beneficiary. "The term 'trust' refers not to a separate legal entity but rather to the fiduciary relationship governing the trustee with respect to the trust property." Huie v. DeShazo, 922 S.W.2d 920, 926 (Tex. 1996) (citations omitted).

While trustees "owe beneficiaries a fiduciary duty of full disclosure of all material facts known to them that might affect [the beneficiaries'] rights," id. at 923 (quotation and citations omitted), trustees must be able to act independently and in the exercise of their best judgment to accomplish the central purpose of administering the trust agreement according to its terms. "[T]he trustee's primary duty under the terms of the trust at issue

was to carry out the settlor's[3] lawful intentions." Moon v. Lesikar, 230 S.W.3d 800, 810 (Tex. App. 2007) (Guzman, J., concurring).

Trustees may employ attorneys to advise them regarding the trust's administration. Under Texas law, because the trust is not a juridical entity, the trustee is the client of the attorney who provides such advice. Huie, 922 S.W.2d at 925. That attorney-client relationship is fully protected by the attorney-client privilege, so that a trustee cannot be compelled to disclose to the beneficiaries his or her confidential communications with the attorney employed to advise the trust. Id. at 923-24. In this respect, under Texas law, "the fiduciary's affairs are [not] the beneficiaries' affairs." Id. at 923 (emphasis added).

On the other hand, unlike the relationship between the trustees and the beneficiaries, I find that Tom Roddy, another Texas citizen who is employed by a company owned by beneficiary Renee Benson and is a "long-time advisor to [all three beneficiaries] in their personal and business affairs," Record Doc. No. 151 at p. 14, is the representative of the beneficiaries for purposes of the attorney-client privilege and work product doctrine. Thus, communications and/or work product exchanged between Roddy and lawyers for the beneficiaries, in which third parties like the trustees were not involved, would qualify for privilege and/or work product protection.

Accordingly, except to the extent that I find a different result as to some of the in camera items addressed below, defendants' attorney-client privilege and work product

---

[3]"The [Texas] Trust Code uses the term 'settlor' to mean creator of a trust, but also provides that the terms 'grantor' and 'testor' mean the same as 'settlor.'" Conte v. Ditta, 312 S.W.3d 951, 959 n.4 (Tex. App. 2010) (citing Tex. Prop. Code § 111.004).

objections to Requests for Production Nos. 3 and 4 to Rosenthal and No. 4 to Rowe are also overruled.

(C)     IN CAMERA DOCUMENTS

Defendant Rosenthal submitted for my in camera review in connection with this motion nine (9) items as to which he asserts work product protection in addition to the attorney-client and/or common interest privilege.  Having reviewed those items, I find that Items Nos. 1, 6, 7, 9, 22 and 88 are not work product.  These materials were assembled by Rosenthal and transmitted to the beneficiaries and/or their representatives in his capacity as trustee responding to requests from the beneficiaries for information about the assets and administration of the trust.  Defendant has failed to bear his burden to establish that these materials were prepared in anticipation of litigation or for trial by or for a representative of another party.  Plaintiff's motion to compel is granted as to these items.

The motion is denied as to Items Nos. 163 and 201.  These items are work product prepared and transmitted by a lawyer for the beneficiaries in connection with litigation. Unlike waiver in the attorney-client privilege context, the fact that these were divulged to Rosenthal in his capacity as trustee and to Rosenthal's lawyer, both of whom were third parties vis-a-vis the beneficiaries and their counsel, does not result in waiver of work product protection.

"The work product doctrine does not exist to protect a confidential relationship but to promote the adversary system by 'safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent.'"  Blockbuster Entm't Corp. v.

McComb Video, Inc., 145 F.R.D. 402, 404 (M.D. La. 1992) (quoting Shields v. Sturm,

Ruger & Co., 864 F.2d 379, 382 (5th Cir. 1989)).  For this reason, "'the mere voluntary

disclosure to a third person is insufficient in itself to waive the work product privilege.'"

In re Grand Jury Proceedings, 43 F.3d 966, 970 (5th Cir. 1994) (quoting Shields, 864 F.2d

at 382).

> Voluntary disclosure waives the attorney-client privilege because it is inconsistent with the confidential attorney-client relationship.  Voluntary disclosure does not necessarily waive work-product protection, however, because it does not necessarily undercut the adversary process. . . . [D]isclosing work product to a third party can waive protection if "such disclosure, under the circumstances, is inconsistent with the maintenance of secrecy from the disclosing party's adversary."  Under this standard, the voluntary disclosure of attorney work product to an adversary or a conduit to an adversary waives work-product protection for that material.

United States v. Deloitte LLP, 610 F.3d 129, 139-40 (D.C. Cir. 2010) (citing United States

v. Am. Tel. & Tel. Co., 642 F.2d 1285, 1299 (D.C. Cir. 1980)) (quoting Rockwell Int'l

Corp. v. U.S. Dep't of Justice, 235 F.3d 598, 605 (D.C. Cir. 2001)) (emphasis added);

accord Secs. & Exch. Comm'n v. Brady, 238 F.R.D. 429, 444 (N.D. Tex. 2006); Varel v.

Banc One Capital Partners, Inc., No. CA3:93-CV-1614-R, 1997 WL 86457, at *2 (N.D.

Tex. Feb. 25, 1997) (citing Edwards v. Whitaker, 868 F. Supp. 226, 229-30 (M.D. Tenn.

1994); McMorgan & Co. v. First Cal. Mortg. Co., 931 F. Supp. 703, 709 (N.D. Cal. 1996);

First Pac. Networks, Inc. v. Atl. Mut. Ins. Co., 163 F.R.D. 574, 582 (N.D. Cal. 1995);

Hartford Fire Ins. Co. v. Pure Air on the Lake Ltd., 154 F.R.D. 202, 211 (N.D. Ind. 1993);

8 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 2024 (1970)).

The "adversary" in this situation is the plaintiff in this case, not the beneficiaries. I find that no disclosure of these two work product items to "a conduit to an adversary" occurred in these circumstances and that there was no waiver of work product protection.

After oral argument, defendant Rowe decided voluntarily to produce certain items as to which plaintiff had requested and I had ordered in camera review.  Record Doc. No. 185.  Accordingly, plaintiff's motion is dismissed as moot as to those items, which Rowe identified on her privilege log as Items Nos. 66, 67, 68, 71, 72, 73 and 74.  Instead, Rowe submitted for in camera review only two emails with attachments as to which she asserts mediation privilege protection from discovery.  Those materials were identified on her privilege log as Items Nos. 69 and 70.

This court has encouraged and endorsed the private mediation efforts in which the parties have engaged as a means of alternative dispute resolution.  Record Doc. No. 65.  Local Rule 16.3.1 unequivocally provides:  "All alternative dispute resolution proceedings are confidential."  Rowe's Items Nos. 69 and 70 do not indicate on their face that they were produced and exchanged as part of the mediation process.  However, the affidavit of S. Mark Murray, Record Doc. No. 189, submitted by Rowe in connection with these materials establishes that they were produced and exchanged for use in the mediation.  Accordingly, I find that these materials are protected from discovery.  Plaintiff's motion is therefore denied as to these two items.

*   *   *

Defendants must provide to plaintiff all additional interrogatory answers, together with the required verifications; and written responses to requests for production, together with actual production of additional materials; ordered herein no later than June 1, 2016.

New Orleans, Louisiana, this ____25th____ day of May, 2016.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE