## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**THOMAS BENSON**                                    **CIVIL ACTION**

**VERSUS**                                                  **NO: 15-782**

**ROBERT ROSENTHAL ET AL.**               **SECTION: "H"(2)**


## ORDER AND REASONS

Before the Court is Defendant Mary Rowe's Motion for Partial Summary Judgment (Doc. 238). For the following reasons, the motion is denied.


## BACKGROUND

This is an action for declaratory judgment. Plaintiff Thomas Benson, appearing as grantor of several trusts, asks this Court to declare that his attempt to exchange certain assets held by those trusts for other assets of equivalent value was effective.  Over the course of several years, Plaintiff established various trusts for the benefit of his daughter, Renee Benson, and two grandchildren, Rita Benson LeBlanc and Ryan LeBlanc.  Plaintiff created three trusts in 2009 (the "2009 Trusts"), three trusts in 2012 (the "2012 Trusts"), a Grantor Retained Annuity Trust in 2012 ("2012 GRAT Trust"), and

1

a Grantor Retained Annuity Trust in 2014 ("2014 GRAT Trust").[1] Notwithstanding the dispute at issue, these trusts hold ownership interests in various entities that in turn own valuable property, including the New Orleans Saints and Pelicans franchises, the New Orleans Fox television affiliate, automobile dealerships, and the Benson Tower and Champions Square development.[2]  Plaintiff asked Defendant Robert Rosenthal to serve as trustee of these trusts.  In 2015, Rosenthal resigned as trustee of the 2012 trusts and appointed Defendant Mary Rowe in his place.

The aforementioned trust documents provide Plaintiff with the power to reacquire or exchange property of the trust with property of equivalent value without the approval of the trustee.  In January of 2015, Plaintiff exercised this power and sent correspondence to Defendant Rosenthal, stating his intention to exchange the trust assets for promissory notes of equivalent value. This correspondence was sent to Rosenthal on January 12, 2015 but intended to make the exchange effective as of January 1, 2015.  With the January 12 correspondence, Plaintiff included a preliminary schedule of values of the trust assets, a Notice of Exchange of trust assets, and blank promissory notes containing valuation adjustment clauses that would operate to adjust the notes automatically to a later-determined appraised value.   The transfer also included certain real estate and the forgiveness of nearly $100 million of indebtedness owed to Plaintiff by some of the trusts.

Rosenthal refused to execute the documents required to complete the exchange, stating that such an exchange requires a simultaneous transfer of

---

[1] The trusts are the Renee Benson 2009 Irrevocable Trust, the Rita Benson LeBlanc 2009 Irrevocable Trust, the Ryan LeBlanc 2009 Irrevocable Trust, the Renee Benson 2012 Irrevocable Trust, the Rita Benson LeBlanc 2012 Irrevocable Trust, the Ryan LeBlanc 2012 Irrevocable Trust, the Tom Benson 2012 Grantor Retained Annuity Trust, and the Tom Benson 2012 Grantor Retained Annuity Trust.

[2] The parties dispute the effectiveness of the exchange attempted by Plaintiff and whether the trusts at issue still own the assets affected by the exchange.

2

property.   He also stated that an unsecured promissory note is "not an appropriate trust investment" and that he must "make his own independent verification that the assets to be exchanged are of equivalent value [with the trust assets]" before the exchange could occur.[3]

On January 24, 2015, Plaintiff supplemented his exchange request with additional documents, including certifications of the values of each trust signed by Plaintiff, collateral assignments granting the trusts security interests, and seven promissory notes for values based on the most recent valuations available.   These promissory notes also contained valuation adjustment clauses. Plaintiff's supplements failed to assuage Rosenthal's concerns, and he again rejected the exchange, stating that there had "not yet been an exchange of assets of equivalent value."[4]

On August 24, 2015, after filing this suit, Plaintiff again supplemented the Notice of Exchange in accordance with the valuation adjustment clauses included in the promissory notes ("August 2015 Notes").  Based on an updated valuation of the trust assets, Plaintiff delivered to Defendants thirteen new promissory notes of specific values and collateral assignments securing each of those notes.  Defendants again rejected Plaintiff's exchange.[5]

On October 13, 2015, Defendants Rowe and Rosenthal filed Motions for Judgment on the Pleadings, asking this Court to dismiss Plaintiff's action on several grounds.  They argued that (1) Plaintiff's attempted substitution was, in fact, a request for a loan, which the trustee had the discretion to deny, or alternatively that (2) Plaintiff's purported substitution did not occur on January 1, 2015 but occurred, at the earliest, on August 24, 2015, if Plaintiff could prove that he exchanged property of equivalent value.  As to the first

---

[3] Doc. 1-47.
[4] Doc. 1-48.
[5] Docs. 48-4, 48-5.

3

argument, this Court held that the determination that a transaction is a loan is a finding of fact and such a finding was premature at that stage. As to the second issue, the Court ruled that the trust instruments grant Plaintiff the unilateral power to substitute assets, and that while the trustee must ensure equivalent value, he does not have the power to prevent such an exchange. The Court also held that Plaintiff complied with all of the requirements of the trusts to effect a substitution on January 24, 2015.

On September 8, 2016, Plaintiff delivered promissory notes to the trustees that were reformed to accommodate modifications requested by the National Football League ("NFL") ("September 2016 Notes"). Specifically, the new notes are non-recourse, and bear a higher interest rate and shorter term. The notes are of equivalent value to the August 2015 Notes. On September 9, 2016, Plaintiff amended his Complaint to address these reformed notes.

In light of the September 2016 Notes and the amended complaint, Defendant Rowe has moved this Court for partial summary judgment, rehashing old arguments and raising issues already addressed by this Court. This Court will address her arguments in turn.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[6] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[7]

---

[6] Fed. R. Civ. P. 56(c) (2012).
[7] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[8]  "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[9]  Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[10]  "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[11]  "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[12]  Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[13]

## LAW AND ANALYSIS

In her motion, Defendant Rowe asks this Court to find that the September 2016 Notes are a request for a loan or, alternatively, that September 8, 2016 should be the date of valuation for the requested exchange.

---

[8] *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 532 (5th Cir. 1997).

[9] *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995).

[10] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

[11] *John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

[12] *Badon v. R J R Nabisco, Inc.*, 224 F.3d 382, 394 (5th Cir. 2000) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

[13] *Boudreaux v. Banctec, Inc.*, 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

Despite having already addressed both of these issues in its prior order, this Court will again entertain Defendant's arguments.

### A. September 2016 Notes as Loans

In reasserting that Plaintiff's transaction is a request for a loan rather than a substitution, Defendant does not raise any new arguments or point to any new facts that would change this Court's prior holding. Indeed, Defendant merely adopts and incorporates her prior Motion for Judgment on the Pleadings. Accordingly, this Court will likewise adopt its prior Order and Reasons denying Defendant's Motion for Judgment on the Pleadings on this issue.[14]

### B. September 8 as Valuation Date

Next, Defendant argues that September 8, 2016 is the earliest date upon which Plaintiff could effectuate the transfer and is therefore the earliest date from which the trust assets can be valued. Defendant has based this argument on her belief that the August 2015 Notes are subject to a suspensive condition of NFL approval. Defendant argues that because the NFL has indicated that it will not approve the August 2015 Notes for use in the exchange, then the condition has failed and the obligations under the notes do not exist.

It is undisputed that the parties have understood throughout this litigation that the NFL would be required to approve of any transfer or encumbrance proposed by Plaintiff's exchange of assets. Defendant argues that the August 2015 Notes were therefore conditioned on this approval. Specifically, Defendant argues that the notes were subject to a suspensive condition. Under Louisiana law, a suspensive condition is a provision of a contract by which "[t]he right to enforce the obligation does not arise until the fulfillment of the suspensive condition, and the obligation may not be enforced

---

[14] Doc. 161.

until the condition is met."[15]  Defendant argues that the August 2015 Notes were conditioned on the approval of the NFL and that the NFL has indicated that they will not approve of the use of the August 2015 Notes in the exchange. Defendant argues that, therefore, the suspensive condition of approval never occurred and thus the August 2015 Notes will never ripen into enforceable obligations.  Defendant argues that because these notes are of no effect, Plaintiff may not rely on those notes to obtain a valuation date of January 24, 2015.  Instead, Defendant argues, the valuation date must be September 8, 2016—the date on which Plaintiff delivered new notes to the trustees.

The Court rejects this argument for several reasons.  First, as Plaintiff points out, the NFL has not rejected the August 2015 Notes.  Indeed, the NFL merely advised that the notes needed to be reformed in order to comply with NFL rules.  Accordingly, it is a stretch to say that the notes were rejected thereby causing the condition to fail.

Second, this Court is not convinced that a suspensive condition even exists in the August 2015 Notes.  Defendant does not identify any provision of the notes creating a suspensive condition.  Instead, she merely argues that Plaintiff has recognized that the NFL would have to approve his proposed transaction.  That may be so, but Louisiana courts have held that a court should find that an obligation is subject to a suspensive condition "only when the express language of the contract 'compels' such a construction."[16]  In addition, "contractual provisions are construed as not to be suspensive conditions whenever possible."[17] Only a provision of the collateral assignments delivered with the August 2015 Notes could support Defendant's argument.  It states, "In the event of any conflict or inconsistency between the terms of the

---

[15] *Murry v. Murphy,* 970 So. 2d 700, 702 (La. App. 3 Cir. 2007).
[16] *Mumblow v. Monroe Broad., Inc.*, 401 F.3d 616, 622 (5th Cir. 2005).
[17] *S. States Masonry, Inc. v. J.A. Jones Const. Co.*, 507 So. 2d 198, 201 (La. 1987).

NFL Rules and the terms of the Note, this Agreement or the Notice, the terms of the NFL rules control."[18]  This Court holds that this language does not clearly create a suspensive condition of NFL approval.  The language does not say that if the terms of the note conflict with the NFL rules then the obligation shall not exist.  Rather, it indicates which rules shall apply in the event that the notes conflict with the NFL rules.  Necessarily then, the obligation will continue to exist but be subject to new rules.  In actuality, this provision supports Plaintiff's decision to reform the notes to comply with NFL rules.  When the language of a contract is clear and unambiguous, the Court need not look elsewhere to determine the parties' intent.[19]  Accordingly, Defendant has not carried her burden to show that the August 2015 Notes are subject to a suspensive condition.

Finally and most compellingly, this Court fails to see how the reformation of the notes Plaintiff has offered to exchange for trust assets has any effect on this Court's prior holding.  As discussed above, this Court has held that if a substitution occurred, it occurred on January 24, 2015 when Plaintiff offered the trustee notes that he certified to be of equivalent value with the trust assets that he sought to remove.  In making this holding, the Court looked to the language of the trust agreements and the practical procedure by which Plaintiff could effect a substitution.  This Court held that Plaintiff had the unilateral right to make an exchange of assets and that the trustee had the obligation to ensure the exchange was for equivalent value.  The Court specifically noted that this obligation did not entitle the trustee to stall or delay the exchange.  Rather, the exchange was effected when Plaintiff offered assets that he believed to be of equivalent value.  From that point

---

[18] Doc. 238-2, p. 21.
[19] *S. States Masonry, Inc.*, 507 So. 2d at 201.

forward, the trustees' obligation was to ensure that those assets were indeed of equivalent value.

It appears to this Court, however, that the trustees have long ago lost sight of this obligation.  At every turn in this litigation, the trustees have sought to prevent Plaintiff from performing an exchange that this Court has held that he has an absolute and unilateral right to perform.  They have consistently sought to move the date of valuation from that selected by Plaintiff.  At every opportunity, this Court has asked Defendants to identify how Plaintiff can practically effect an exchange if the trustees are permitted to treat the valuation date as a moving target.  The Court has been impressed by the verbal acrobatics that have occurred in avoidance of this question.  As this Court has previously detailed at length, such a holding would permit the trustees to prevent the exchange ad infinitum, rendering Plaintiff's right to make a substitution worthless.

In this the Defendants' fourth quest to prevent Plaintiff from effecting an exchange, Defendant Rowe has argued that the failure of a suspensive condition in the August 2015 Notes means those notes never came into effect and the September 2016 Notes cannot therefore be said to reform those non-existent notes.  She argues that the September 2016 Notes are new instruments offered to the trustee for exchange, and the valuation date should now be the date upon which these new notes were offered—September 8, 2016.  This Court disagrees with this characterization.  Rather, this Court views the September 2016 Notes as the culmination of Plaintiff's efforts to provide the trustees with notes that will appease both the trustees and the NFL and complete the equivalent value process began by the January 24, 2015 exchange.  The September 2016 notes are a forward step in the process to

resolve an exchange that Plaintiff has the absolute right to effect.   Defendants would be better served by joining in that endeavor.[20]

**<u>CONCLUSION</u>**

For the foregoing reasons, Defendant's Motion is DENIED.


New Orleans, Louisiana this 10th day of November, 2016.


**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[20] Defendants are behooved to consider the value of further discovery regarding the date of exchange in light of this opinion.